792 So.2d 527 (2001)
Nancy Kay DAILEY and Thomas A. Warmus, Appellants,
v.
Randall L. LESHIN and Randall L. Leshin, P.A., a Florida professional services corporation, and Arthur M. Walker, Trustee of the Arthur M. Walker Trust, Appellees.
No. 4D00-5.
District Court of Appeal of Florida, Fourth District.
June 20, 2001.
Rehearing Denied September 17, 2001.
*528 Nancy Kay Dailey and Thomas A. Warmus, Lighthouse Point, pro se.
Richard J. Potash of Richard J. Potash, P.A., Plantation, for appellee Arthur M. Walker, Trustee of the Arthur M. Walker Trust.
Randall L. Leshin of Randall L. Leshin, P.A., Pompano Beach, pro se.
WARNER, C.J.
Appellants challenge a final summary judgment rendered against them on their counterclaims raising Truth-in-Lending Act ("TILA") violations as a defense to a mortgage foreclosure. The trial court granted summary judgment because appellants' *529 sale of the property rendered their TILA claims moot. While we agree that the claim for damages under TILA's section 1635 was moot, the court failed to address the other statutory claims raised. We therefore reverse the summary judgment as to those claims.
Appellant, Nancy Kay Dailey, experienced financial trouble and employed attorney Randall L. Leshin to represent her in various matters. Appellant was looking for a loan, which was to be secured with a mortgage on her homestead, and Leshin put her in touch with appellee, the Arthur M. Walker Trust ("the Trust"). Although the rates were high, appellant was pressed for time, and she, along with her husband (Thomas A. Warmus), accepted the mortgage terms.[1] Leshin acted as the closing agent. In April of 1998, appellants (Dailey and Warmus) executed a promissory note and mortgage for $100,000, together with a future advance for $300,000. A note for the $300,000 was executed at the end of May, 1998. The rate of interest on both notes was 12% but provided for the highest rate allowed by Florida law in the case of default. Appellants were never given the required TILA notice of their right to rescind the transaction. After receiving the $300,000, Leshin refused to deliver the money to appellants, claiming that they owed him attorney's fees for his earlier work. Appellants complained strenuously and, as part of this dispute, failed to pay the mortgage payments because they believed that Leshin and the Trust were conspiring together.
The Trust subsequently filed an action to foreclose on the mortgage for nonpayment. Appellants filed an answer, affirmative defenses, counterclaim, and third party complaint against Leshin. The counterclaim contained tort claims and alleged that the Trust was liable for Leshin's tortious acts because Leshin acted as the Trust's closing agent. In its prayer for relief, the counterclaim sought recision and cancellation of the $300,000 note due to fraudulent inducement and negligent nondisclosures. However, no TILA claim was alleged.
The Trust moved to dismiss the counterclaim, alleging that Leshin was not acting within the scope of its undertaking. During the pendency of the proceedings, appellant contracted to sell the subject property in March of 1999 with a closing date of April 30, 1999. Because of a cloud on the title from the Trust's foreclosure action, the buyer and appellant agreed to extend the contract for ninety days from May 20, 1999. There is no indication in the record that the contract executed in March of 1999 actually closed.
On May 3, 1999, appellants served a motion to amend their answer and counterclaim to allege TILA violations, violations of the Real Estate Settlement Procedures Act ("RESPA"), the Mortgage Brokers Act, and the Fair Credit Reporting Act ("FCRA"). As part of the pleadings, appellants filed a Notice of Recission and Demand for Compliance pursuant to TILA. The court granted the motion, and appellants filed the amended answer and counterclaim.
The Trust moved for summary judgment on the counterclaim and in an amended motion asserted that appellants' right of recission under TILA had expired because they contracted to sell the property prior to service of the Notice of Recission. Appellants responded that their prayer for recission in the original counterclaim provided sufficient notice so that the claim should relate back to the original *530 filing date. In addition, they claimed that there had been no sale, nor was their contract for sale "irrevocable." Even if they could not assert a claim for recission, they could still assert claims for damages under TILA. Nevertheless, the court granted summary judgment. It also determined that all of appellants' remaining motions were moot.
The Trust then moved for summary judgment on the foreclosure complaint with an attached affidavit of amounts due under the two respective notes at the default interest rate of 18%. Appellants responded with a motion claiming that these interest charges were a new TILA violation under section 1639. The trial court never ruled on appellants' motion.
Instead, the Trust voluntarily dismissed its foreclosure action because the notes were paid off as part of appellants' eventual sale of the property in December, 1999. Appellants then appealed the summary judgment of the counterclaim, and the motions related thereto.
The first issue we must address is whether appellants' contract for sale in March of 1999 terminated their right of recission under TILA section 1635(f) prior to their Notice of Recission on April 30, 1999. Section 1635 provides that:
(a) Disclosure of obligor's right to rescind
Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and recission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with the regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide ... appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.
. . . .
(f) Time limit for exercise of right

An obligor's right of recission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor....
15 U.S.C. § 1635 (1997)(emphasis added). The consumer thus has the absolute right to rescind up to three days following the closing of the transaction or delivery of the information containing the material disclosures required by TILA. However, even if the material information is not provided, the consumer's right to rescind expires three years after the date the transaction is consummated or upon sale of the property, whichever occurs first.
Appellees rely on Hefferman v. Bitton, 882 F.2d 379 (9th Cir.1989), for the proposition that a contract for sale of the property terminates the right of recission pursuant to section 1635(f), rather than the actual sale. In Hefferman, the consumer had signed a contract for sale, and on the date of closing, the consumer gave notice to the lender that she was exercising her *531 right of recission under TILA. The opinion does not disclose whether the notice was given before or after the actual closing. However, the closing agent disbursed funds to satisfy the mortgage to the creditor. The ninth circuit addressed this issue in dicta, because it had already determined that no TILA violations had occurred. It stated:
... [W]e hold that Hefferman should have sent the notice before contracting to sell her property. Although we have found no precedent on the issue, we believe that the "sale" that § 1635(f) establishes as a deadline (whether for sending a notice or bringing a lawsuit) occurs at this time, and not at the time of the ultimate conveyance.
Congress probably enacted § 1635(f) because it worried that allowing a consumer to rescind after selling his residence would cloud property titles and inhibit transactions. See Federal Reserve Board, Annual Report to Congress on Truth in Lending for the Year 1972, reprinted in 119 Cong.Rec. 4596, 4597 (1983) (discussing the policies behind § 1635(f)). Terminating the right to rescind when the consumer irrevocably agrees to sell his property fulfills this policy better than terminating the right upon the actual conveyance. Allowing consumers to rescind or attempt to rescind after entering such a contract implicates the rights of the purchaser and his financing agency and could produce needless litigation and other difficulties. Although Hefferman may have concealed the attempted rescission from the Malcolms, or informed them of her intentions but assuaged their doubts by paying the lenders in full at the conveyance, some sellers might attempt to extract an advantage from their buyers. By threatening to rescind, for example, they might attempt to impede, delay, or abort a sale or to exact tribute from a buyer who worries that the original creditor, if not paid, may demand payment at a later date, a possibility that might cause the buyer's banker to withdraw his loan commitment. If the cutoff for rescission occurs upon the contract to sell, however, these possibilities will be eliminated and all buyers will know exactly what they are facing.
Id. at 384. Because we find the ninth circuit's analysis persuasive, we follow Hefferman and hold that appellants' TILA claims based on failure to disclose the right to rescind expired when they contracted to sell the property.
Initially, Hefferman's conclusion is consistent with a proper construction of the statute. Section 1635(f) provides that the right of recission expires "upon the sale of the property." A sale is defined as a "contract between two parties, called, respectively, the `seller' (or vendor) and the `buyer' (or purchaser), by which the former, in consideration of the payment of money or promise of payments of a certain price of money, transfers to the latter the title and the possession of property." Black's Law Dictionary 1200 (5th ed.1979). Thus, when appellants contracted to sell the property in March, their right to rescind expired before they exercised it in April.
Appellants attempt to distinguish Hefferman by claiming it only held that "irrevocable" contracts for sale terminate the right of recission. While Hefferman does use that "irrevocable" language, its rationale still applies to the instant factual scenario. Appellants noticed their recission while the contract for sale was pending. Regardless of whether the contract could have been revoked, it existed and appellants were contractually obligated to sell on April 30, 1999. Allowing appellants to rescind at that time would impair the innocent *532 third party purchaser's rights and likely result in needless litigation. Therefore, appellants Notice of Recission while the contract was pending was ineffectual.
Appellants also contend that their TILA claim's Notice of Recission related back to their original counterclaim's prayer for recission. Amendments generally do not relate back if they raise a new cause of action. See W. Volusia Hosp. Auth.v. Jones, 668 So.2d 635, 636 (Fla. 5th DCA 1996). The proper relation back test is whether the amended claims arose out of the same conduct, transaction, or occurrence originally set forth, even if they raise a new legal theory. See Fla. R. Civ. P. 1.190(c); Ron's Quality Towing, Inc. v. Southeastern Bank of Fla., 765 So.2d 134, 136 (Fla. 1st DCA 2000); Lefebvre v. James, 697 So.2d 918, 920 (Fla. 4th DCA 1997)(negligence in delivery process claim did not relate back to claim for negligence in preparation of the product). Here, the amended counterclaim's new TILA violations set forth different facts than the original tort claims. The Trust was thus not on fair notice of the general factual situation (i.e., the lack of TILA mandated disclosures), giving rise to the right of recission under TILA. See Kiehl v. Brown, 546 So.2d 18, 19 (Fla. 3d DCA 1989)(original claim must give fair notice of general factual situation). Further, Hefferman's rationale seeking to protect the innocent purchaser and reduce needless litigation would be frustrated if the amendments related back to the pre-sale counterclaim. Thus, the TILA Notice of Recission in the amended counterclaim did not relate back to the original counterclaim's prayer for recission on tort grounds.
In addition, appellants also made a claim for damages pursuant to TILA's section 1640. That section permits the recovery of actual damages incurred as a result of a violation of TILA's disclosure provisions and also permits recovery of no more than $2,000 for those violations. See 15 U.S.C. §§ 1640(a)(1)-(2) (1997). The damages action must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e) (1997).
Here, the alleged TILA disclosure violations occurred when the initial notes were executed on April 15, 1998, and May 28, 1998. Appellants first raised these alleged violations in their motion for leave to amend their counterclaim on May 3, 1999. The amended counterclaim was actually filed on June 2, 1999, when the court granted the motion. Thus, appellants claim was timely as to the second note. See Totura & Co. v. Williams, 754 So.2d 671, 680 (Fla.2000)(motion for leave to amend tolls the statute of limitations).
Although an exception exists to the one year statute of limitations if the claim is brought as a defensive counterclaim to foreclosure, see 15 U.S.C. § 1640(e) (1997), the April 15, 1998, note is not timely under that exception. That defensive counterclaim for recoupment was extinguished when appellants sold the property, paid the notes, and precluded the foreclosure. See Bolduc v. Beal Bank, SSB, 167 F.3d 667, 672 n. 4 (1st Cir.1999); Distribution Servs., Ltd. v. Eddie Parker Interests, Inc., 897 F.2d 811, 812 (5th Cir.1990). The recoupment claim did not survive the dismissal of the foreclosure action.
Finally, appellants also filed a motion alleging a violation of TILA's section 1639. The motion alleged that section 1639 was violated when appellee filed an affidavit in the foreclosure action stating that a default interest rate of 18% was being charged. While the motion was not titled as a motion to amend the counterclaim, in substance that is what was sought. The motion specifically labeled appellee's increasing the rate as "extortion, *533 civil theft and conversion" and requested that the "court address this new issue as a new and separate violation of TILA. Instead of addressing the issue, the trial court stated in its amended final judgment that all remaining motions were moot. As the motion described an arguable additional violation of TILA that caused appellants additional damages, we reverse to permit the court to rule on the motion, which we construe as a motion to amend. See Dimick v. Ray, 774 So.2d 830, 833 (Fla. 4th DCA 2000) (motions to amend should be liberally granted).
Finding no merit in appellants' remaining points on appeal, we reverse and remand for further proceedings consistent with this opinion.
SHAHOOD and HAZOURI, JJ., concur.
NOTES
[1] There are a multitude of other facts involving the loan and the dealings between Leshin and appellants which we do not include as they are not material to the TILA issues.