WELLS, J.
 

 Trumbull Insurance Company, d/b/a The Hartford Insurance Company, appeals from an order awarding Daniel Wolentar-ski over $59,000 in attorneys’ fees purportedly for representation in the personal injury protection (PIP) claim asserted below. Finding no support for the award, we reverse.
 

 In December 2005, Wolentarski brought suit against the Miami-Dade County School Board and Trumbull, his insurer, to recover damages he allegedly sustained when his vehicle collided with a school bus. The initial complaint was comprised of only two counts: Count I against the School Board titled “NEGLIGENCE CLAIM AGAINST SCHOOL BOARD,” and Count II against Trumbull titled
 
 *1052
 
 “NEGLIGENCE CLAIM FOR UNINSURED/UNDERINSURED MOTORIST BENEFITS.” As to Trumbull, the complaint alleged only as follows:
 

 That at all times material hereto, TRUMBULL INSURANCE COMPANY, a foreign corporation was doing business as THE HARTFORD INSURANCE COMPANY, hereinafter referred to as “HARTFORD”, [sic] was authorized to do and doing business in the State of Florida as an insurance company.
 

 [[Image here]]
 

 That at all times material hereto, Plaintiff was insured by HARTFORD and said policy provided for uninsured/underinsured motorist coverage.
 

 No mention was made in this complaint of entitlement to or denial of PIP benefits, nor did Wolentarski seek an award of attorneys’ fees for litigating a PIP or any other claim.
 

 For six months after this complaint was filed, the parties litigated these negligence/unmsured/underinsured motorist claims. The School Board sought to dismiss the negligence claim against it for failure to comply with the notice requirements stated in section 768.28(6)(a) of the Florida Statutes.
 
 [1]
 
 Wolentarski then moved for summary judgment on this issue. Wolentarski also moved to strike the School Board’s section 627.737(2) affirmative defense.
 
 [2]
 

 It was not until June 28, 2006, six months after this action commenced, that Wolentarski sought leave to amend his complaint to add a claim against Trumbull for payment of PIP benefits and for the first time to seek an award of attorneys’ fees related to that claim, the only claim on which attorneys’ fees were authorized.
 
 [3]
 
 By this juncture, depositions (two to be exact) had already been taken and other discovery exchanged.
 

 Following amendment to add the PIP claim, litigation continued primarily on the School Board’s affirmative defenses. Wol-entarski moved to strike the School
 
 *1053
 
 Board’s section 627.737 defense. The motion was granted. The School Board moved for reconsideration. The motion was denied. Wolentarski’s motion for partial summary judgment on the School Board’s claim that he had failed to comply with the notice requirements detailed in Chapter 768 of the Florida Statutes also was granted following a hearing on that motion.
 

 On August 16, 2006, the action was mediated but impassed. One month later, Wolentarski settled his claim against the School Board for $30,000. The action was dismissed as to the School Board and as to Trumbull on the uninsured/underinsured motorist claim with each party to bear his or its respective costs and attorneys’ fees as to those claims. Two months later, the parties resolved the remaining PIP claim and agreed that Wolentarski was entitled to section 627.428 attorneys’ fees for litigating that claim.
 

 Wolentarski’s attorney thereafter submitted an affidavit in which he swore that he had spent 135 hours at a rate of $500 per hour “in litigation of this file in order to obtain settlement of the personal injury protection benefits.”
 
 [4]
 
 At a hearing held to determine the amount to be awarded for representation of Wolentarski in the PIP action, counsel testified that: (1) he had kept no contemporaneous time records during his representation in this action; (2) although the PIP claim had not been added to Wolentarski’s complaint until near the end of his representation, in his opinion the PIP claim had always been a part of the action, entitling him to fees “relating back” to the time the complaint was filed; (3) from his page-by-page review of his file going back to inception of the action, he had been able to segregate the time that he spent litigating only the PIP issue; and, (4) he had expended 143 hours litigating the PIP claim.
 
 [5]
 
 When pressed to provide some support for this astounding number of hours — which amounts to 17.9 eight-hour work days, or over three full five-day work weeks — spent working on a PIP claim brought shortly before the action was settled and after most, if not all, of the discovery had been completed on all issues — Wolentarski’s counsel cavalierly testified:
 

 THE COURT: Do you have some kind of work sheet when you went through and reconstructed it [the time spent on the PIP claim]?
 

 WOLENTARSKI’S COUNSEL: No, I didn’t do that either. I go through every page of the file, and I just add it up.
 

 INSURER’S COUNSEL: Did you bring any of those sheets of how you added it up and invoices of saying on this day I did this and I am estimating .2?
 

 WOLENTARSKI’S COUNSEL: No. I just said I don’t do a worksheet. I add it up.
 

 INSURER’S COUNSEL: Where are those sheets?
 

 WOLENTARSKI’S COUNSEL: I told you — sorry we are not understanding each other. I told you I go through page by page and I add up the time. I didn’t do it on a work sheet.
 

 INSURER’S COUNSEL: Where are those sheets?
 

 WOLENTARSKI’S COUNSEL: I don’t do a sheet.
 

 
 *1054
 
 INSURER’S COUNSEL: I thought you said you added up the time?
 

 WOLENTARSKI’S COUNSEL: I did.
 

 INSURER’S COUNSEL: Where is that?
 

 WOLENTARSKI’S COUNSEL: In my mind. I added it up page by page.
 

 This testimony supposedly was “corroborated” by the testimony of counsel’s fee “expert” who, contradicting counsel, stated that the claims were so intertwined that they could
 
 not
 
 be segregated thereby entitling counsel to be paid for the total amount of time he had spent litigating the entire case, which in the expert’s opinion was between 133 and 215 hours. When questioned about why counsel would be entitled to an award of fees for all of the time that he had spent litigating all of the claims, the expert testified that he did not believe that counsel’s file gave counsel credit for all of the telephone calls and other undocumented activities that he must have performed in this matter:
 

 INSURER’S COUNSEL: ... You’re aware on the two-count complaint initially brought there was no mention of PIP, true?
 

 WOLENTARSKI’S EXPERT: The word was not mentioned on the original complaint.
 

 INSURER’S COUNSEL: No request for attorney’s fees in the original complaint, you’re aware of that?
 

 WOLENTARSKI’S EXPERT: That is correct.
 

 INSURER’S COUNSEL: You’re giving him all the credit for all the time spent on this complaint and everything that took place up through and including the resolution of the case, even though PIP wasn’t mentioned, nor was there a request for attorney’s fees mentioned, isn’t that true?
 

 WOLENTARSKI’S EXPERT: It is true because I think there is a lot of time missing. So I think his time is within the minimum range.
 

 INSURER’S COUNSEL: You’re not separating out any time for how much time he spent litigating the claim against the School Board, and how much time he spent litigating the UM claim, because only the claim for PIP benefits gives him a right for fees, isn’t that true?
 

 WOLENTARSKI’S EXPERT: I am not following your question. The first part about it, I am not able to separate out all the intertwined work.
 

 INSURER’S COUNSEL: You looked at every page of the file.
 

 WOLENTARSKI’S EXPERT: Yes.
 

 INSURER’S COUNSEL: When you looked at every page of the file you didn’t say, well, this letter doesn’t have anything to do with this PIP, so cross that out. You didn’t do that. You didn’t do [sic]?
 

 WOLENTARSKI’S EXPERT: I didn’t do it in that fashion, no.
 

 INSURER’S COUNSEL: And on the pages of where you came across something that was PIP related, you didn’t create a document to say on such and such a date [Wolentarski’s counsel] did this task, which is PIP related, and I am going to give him .4 hours or four hours or .2 hours. You didn’t do that either?
 

 WOLENTARSKI’S EXPERT: I didn’t do that at all. It would have taken me another 20 hours to bill it if I was going to do it on a item by item basis in that fashion.
 

 Based on counsel’s and the expert’s testimony, the trial court concluded that the reasonable number of hours expended by counsel on the PIP claim alone was 133 hours (a little over sixteen eight-hour days or over three five-day work weeks). The
 
 *1055
 
 court also concluded that a reasonable rate for this attorney’s services was $450 an hour.
 
 [6]
 
 This, according to the trial court, made “the lodestar $59,850.00” for the PIP claim, about which the only real question raised below was whether New York or Florida law applied.
 
 [7]
 

 We reverse this award for a number of reasons. First, we reject the notion that the late filed amendment to add a PIP claim and a request for related attorneys’ fees relates back to the beginning of this action. “[W]hen a cause of action set forth in an amended pleading in a pending litigation is new, different, and distinct from that originally set up, there is no relation back.”
 
 Livingston v. Malever,
 
 103 Fla. 200, 137 So. 113, 118 (1931); W.
 
 Volusia Hosp. Auth. v. Jones,
 
 668 So.2d 635, 636 (Fla. 5th DCA 1996). More specifically, amendments “relate back” if they “arose out of the same conduct, transaction, or occurrence originally set forth. .... ”
 
 Dailey v. Leshin,
 
 792 So.2d 527, 532 (Fla. 4th DCA 2001). The original negligence claim against the School Board and the uninsured/underinsured claim against Trumbull asserted in this case, arose out of the collision of the school bus and Wol-entarski’s vehicle. These claims required Wolentarski to prove that the School Board bus driver’s negligence was the legal cause of harm to him and that he was entitled to recover for that harm from the School Board and from Trumbull on its uninsured/underinsured coverage if the School Board could not or did not satisfy his damages in full.
 

 By contrast, Wolentarski’s PIP claim against Trumbull involves no determination of fault on the School Board’s part or the extent of Trumbull’s obligation to answer for that harm, but arises instead from a failure to pay contracted benefits to medical providers. The claims do not in any manner arise from the same “conduct, or transaction or occurrence” so as to permit the PIP claim amendment to “relate back” to the original complaint.
 
 See W. Volusia Hosp. Auth.,
 
 668 So.2d at 636;
 
 Dailey,
 
 792 So.2d at 532. The date of the amendment to add the PIP claim was, therefore, the first date from which attorneys’ fees relating to that claim could have been awarded. Wolentarski’s counsel’s testimony regarding the number of hours he expended on this action from the date the complaint was filed will not, therefore, support the instant fee award for litigating the PIP claim.
 

 Second, the testimony of both counsel and his expert about the time expended on this PIP claim amounts to little more than rank speculation that, as a matter of law, will not support a fee award. A fee “award must be supported by evidence detailing the nature and extent of the services performed and by expert testimony regarding the reasonableness of the fee.”
 
 Morton v. Heathcock,
 
 913 So.2d 662, 669 (Fla. 3d DCA 2005);
 
 see Fla. Patient’s Comp. Fund v. Rowe,
 
 472 So.2d 1145, 1150 (Fla.1985) (“Florida courts have emphasized the importance of keeping accurate and current records of work done and time spent on a case, particularly when some
 
 *1056
 
 one other than the client may pay the fee. To accurately assess the labor involved, the attorney fee applicant should present records detailing the amount of work performed”) (citations omitted);
 
 Brewer v. Solovsky,
 
 945 So.2d 610, 611 (Fla. 4th DCA 2006) (“An award of attorneys’ fees requires competent and substantial evidence. Competent evidence includes invoices, records and other information detailing the services provided as well as the testimony from the attorney in support of the fee.”) (citations omitted). While we recognize that where an attorney has not kept contemporaneous time records, a fee award may still be secured on a reconstruction of time expended, the reconstruction must consist of “something more than wild guesses.”
 
 Brake v. Murphy,
 
 736 So.2d 745, 747 (Fla. 3d DCA 1999);
 
 see also Cohen & Cohen, P.A. v. Angrand,
 
 710 So.2d 166, 168 (Fla. 3d DCA 1998) (confirming that where no time records have been kept, it is permissible for a reconstruction of the time expended may be prepared).
 

 In this case, counsel introduced no written or oral reconstruction of the time that he expended on the PIP claim. Nor did he introduce any other evidence to describe or detail the pleadings, discovery, research, hearings, or other services rendered in litigating that PIP claim. Rather, the proof submitted was no more than a guesstimate. This is legally insufficient.
 
 See Brake,
 
 736 So.2d at 748 (stating that numbers “plucked from the air and standing alone will not support a fee award”).
 

 His expert’s testimony was of even less evidentiary value than counsel’s testimony. After contradicting counsel’s testimony that the time spent on the PIP claim could be segregated from that spent on the negligence/uninsured/underinsured motorist claims, the expert went on to testify that counsel was entitled to be compensated for all of the time the file showed had been spent on all of the claims.
 
 [8]
 
 He justified this conclusion by including in his calculation what he believed to be the amount of time counsel must have spent on telephone conversations and other matters not documented in his files. This is not fact based opinion, it is pure speculation. While there must be testimony from an expert witness on the reasonable amount of the fees, “[i]t is elementary that the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value.”
 
 Arkin Constr. Co. v. Simpkins,
 
 99 So.2d 557, 561 (Fla.1957). “It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion.”
 
 Id.
 
 at 561. In short, the “expert” testimony in this case finds no factual support in the record and is, therefore, of no evidentiary value whatsoever. Thus, it cannot, and does not, support the instant fee award.
 

 Additionally, we note that in determining the amount to be awarded, a trial court must consider whether the number of hours expended in the representation is
 
 reasonable. See In re Estate of Platt,
 
 586 So.2d 328, 333 (Fla.1991) (stat
 
 *1057
 
 ing that in determining the number of hours that have been reasonably expended, a court must consider the time that would ordinarily have been spent by lawyers in the community to resolve this particular type of dispute, which is not necessarily the number of hours actually expended by counsel in the case at issue);
 
 Fla. Birth-Related Neurological Injury Comp. Ass’n v. Carreras,
 
 633 So.2d 1103, 1110-11 (Fla. 3d DCA 1994) (stating that under the “hour setting” portion of a fee award it is important to distinguish between the “hours actually worked” and the “hours reasonably expended,” because the hours actually worked is not the issue);
 
 Mercy Hosp., Inc. v. Johnson,
 
 431 So.2d 687, 688-89 (Fla. 3d DCA 1983) (“In deciding upon amounts to be awarded as attorney’s fees, a trial court must consider not only reasonableness of the fees charged but the appropriateness of the number of hours counsel engaged in performing his services as well.”). While this court reviews such determinations by courts below for an abuse of discretion, we are not required to abandon what we learned as lawyers or our common sense in evaluating the reasonableness of an award.
 
 Ziontz v. Ocean Trail Unit Oumers Ass’n,
 
 663 So.2d 1334, 1335 (Fla. 4th DCA 1993) (finding $60,000 in fees awarded in connection with litigation regarding an outstanding one hundred ($100) dollar assessment was manifestly unjust stating “we agree entirely ... that we have a special responsibility over attorney’s fees and need not abandon as judges what we knew as lawyers or — for that matter — our common sense”) (citing
 
 Miller v. First Am. Bank & Trust,
 
 607 So.2d 483 (Fla. 4th DCA 1992)). Thus, in
 
 Mercy Hospital,
 
 431 So.2d at 688, the court concluded that an attorney’s claim that he had spent 5563 hours negotiating three loans was “inherently incredible.” The same must be said as to counsel’s claim that he spent more than three entire work weeks doing nothing but litigating a PIP claim added at the end of an action (settled for all of $30,000) brought primarily against the School Board to recover for the alleged negligence of a bus driver.
 

 We do not doubt that Wolentarski is entitled to recover some attorneys’ fees for representation in the PIP claim. However, that recovery must be based on credible, competent, substantial evidence as to the time his attorney actually expended on
 
 this
 
 as opposed to the other claims. Accordingly, the order under review is reversed and the matter remanded for a new hearing to determine a reasonable fee related solely to the PIP claim.
 

 [1]
 

 . This provision in pertinent part states:
 

 An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing....
 

 § 768.28(6)(a), Fla. Stat. (2008).
 

 [2]
 

 . Section 627.737(2) limits damages in tort actions against owners, registrants, operators, and occupants of motor vehicles or against any person or organization legally responsible for such persons' acts or omissions, where "security has been provided as required by ss. 627.730-627.7405," to damages for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation or use of such motor vehicles only in the event that the injury or disease consists of significant and permanent loss of an important bodily function; permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement; significant permanent scarring or disfigurement; or death.
 

 [3]
 

 .Section 627.428 authorizes attorneys’ fees in PIP cases, and states in relevant part:
 

 (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured’s or beneficiary’s attorney prosecuting the suit in which the recovery is had.
 

 [4]
 

 . The policy at issue here was a New York policy which provided for $50,000 in personal injury protection coverage.
 

 [5]
 

 . At the fee hearing, reference was made to counsel’s amended affidavit as seeking compensation for 143 hours. However, we have been able to find only counsel’s initial affidavit seeking compensation for 135 hours.
 

 [6]
 

 . Trumbull does not dispute the reasonableness of the hourly rate employed.
 

 [7]
 

 . The order under review concluded:
 

 The number of hours expended by Plaintiff’s counsel ... in this PIP matter is 133 hours and his reasonable hourly rate is $450 per hour making the lodestar $59,850. The court also concluded that the reasonable hours expended by a second firm that performed the research on which state's law applied to the PIP claim was 4.5 hours at $300 per hour. Thus the court entered final judgment in the amount of $61,200 that Wolentar-ski was to recover for attorney’s fees from Trumbull.
 

 [8]
 

 .
 
 See Salisbury v. Spielvogel,
 
 451 So.2d 974, 975 (Fla. 4th DCA 1984) (concluding that where work performed on compensable issues can be segregated from work on non-compensable issues, and the trial court fails to allocate what is recoverable and what is not, the appellate courts will find an abuse of discretion and reverse the matter for a new hearing);
 
 Hamilton v. Palm Chevrolet-Oldsmobile, Inc.,
 
 388 So.2d 638, 639 (Fla. 2d DCA 1980) (vacating award of fees and directing trial court to conduct new hearing to determine a reasonable fee for attorneys based on services for which fees were recoverable).