FERNANDEZ, J.
The appellants-defendants, Bernardo Kopel and Enrique Kopel, appeal the trial court’s Final Judgment entered in favor of the appellee-plaintiff, Leon Kopel. We reverse because there is no relation back or unjust enrichment.

Factual Background

a. The Business Relationships

Leon and Enrique Kopel are brothers. They were business partners with their father, Scharja Kopel. Scharja created a family textile business in the Dominican Republic where they lived. Scharja made all ultimate decisions on family investments.
In 1987, Enrique’s son, Bernardo, graduated from college and lived in Miami, Florida. Scharja wanted to assist him financially and thought investing in Florida real estate would be good for the family. Scharja directed that family money be sent to Florida and that Leon, Enrique, and Bernardo would each own one-third of the investments. In 1988 and 1989, the family invested $6.6 million to buy two properties in Miami: half of the ownership for a piece of land to be developed as a warehouse (“KOP I”) and all of a Miami shopping center (“KOP II”). Leon, Enrique, and Bernardo each invested $2.2 million to purchase the properties. Because of onerous laws regarding foreign ownership, they established the entities as S-corporations, listing Bernardo, the only partner with U.S. citizenship, as the sole owner of these entities.
In 1991, Leon decided he wanted his actual ownership of the Florida investments to be legally recognized. Leon sought an American transactional lawyer who suggested that promissory notes be created from Bernardo to Leon for $845,000 and $1.45 million, even though the transactions were investments and not loans. In August 1991, these two notes were created and back-dated with effective dates of January 4, 1989 and January 3, 1989, in the sums of $1.45 million and $845,000, respectively.
Meanwhile, Scharja became ill and decided to retire from the family business. He requested that Enrique and Leon buy out his interests for $8.884 million and directed that they acquire the money to pay him by borrowing money through their corporations. Leon and Enrique, through a series of transactions, obtained a loan to their respective companies from the Royal Bank of Canada for $15 million. Leon borrowed $5 million through his solely-owned corporation, Lerif Corporation. Enrique borrowed $10 million through his solely-owned corporation, Beko Corporation.
Lerif and Beko used the $15 million to pay $8.884 million to Scharja and to create Nautilus Holdings, Ltd., (“Nautilus”), a British Virgin Islands corporation. Leon held a one-third interest in Nautilus while Enrique controlled the other two-thirds. Nautilus then purchased the half of “KOP I” that had been owned by outside investors for $585,000. The brothers then *1150 formed a second new company, Eminence Corporation, NV, (“Eminence”), a corporation of the then existing Netherlands Antilles. Again, Leon held a one-third interest while Enrique controlled the other two-thirds. Eminence purchased a note and mortgage from Southeast Bank, N.A. worth $5.15 million for the discounted sum of $4,851,119. The remaining funds were used for fees and expenses.
By 1992, relations between the brothers had rapidly deteriorated. Leon demanded that Enrique return the $5 million that Leon’s corporation had borrowed. Leon also demanded payment from his nephew, Bernardo, on the promissory notes for $845,000 and $1.45 million. When neither of these demands was met, Leon filed suit in 1994.

b. Trial Court Proceedings

Litigation ensued over the next few years with changes occurring in the pleadings, including references to Leon’s claims as an investor or a lender. In November 1997, Leon filed his second amended complaint, adding the legal entities to the lawsuit, including Eminence and Nautilus. He alleged that he funded these two foreign companies, as well as the two Florida corporations (KOP I and KOP II) with his $5 million, while at the same time this money was a loan by him to Bernardo. However, the trial court eventually denied the claims against the legal entities. Leon continued to sue on the two promissory notes, sought the same $5 million back as an alleged loan to both Bernardo and Enrique, and alternatively claimed that he never loaned any money but rather invested in the entities and was entitled to damages for fraud, a shareholder’s derivative action, RICO and other claims.
The case proceeded to trial in 2008. Leon sued on the two promissory notes, the loan, and unjust enrichment. At trial, for the first time and over the defendants’ objection, Leon claimed that various settlement conversations between him and Enrique after 1991 were not actually settlement discussions but rather independent oral agreements whereby Enrique was to pay $5 million to Leon in exchange for Leon’s interest in the entities. Leon testified that these discussions were between him and Enrique only. The trial ended in a hung jury and then mistrial. The trial court then ordered the parties to amend the pleadings.
In September 2008, Leon filed a third, fourth and then a fifth amended complaint. His amended complaint alleged that from 1987 to 1991, the $5 million was provided by the family to Bernardo with the understanding that Bernardo, Leon, and Enrique would each be entitled to a one-third interest in any profits from the ventures operated by Bernardo. Leon abandoned his claims on the two promissory notes. Instead, he alleged that using the $15 million loan, he lent $5 million to Bernardo (count I), and at the same time, received an oral promise from Enrique and Bernardo that in exchange for $5 million, Leon would give up his interests in the companies (count II). He also alleged that Enrique and Bernardo were unjustly enriched when he provided them $5 million, and they kept it (count III). Bernardo and Enrique challenged this pleading due to its inconsistencies and due to the new claims being time-barred by the applicable four-year statute of limitations. However, the trial court denied their motion.
Prior to trial, the defendants moved for summary judgment, arguing the complete lack of evidence of any money ever being loaned to Bernardo, the lack of evidence that Bernardo participated in any agreement to repay Leon in exchange for Leon’s interests in the companies, and that because the alleged oral agreement with En *1151 rique in 1991 was pled for the first time in 2008, it was time-barred. The trial court denied the motion, and the case proceeded to trial.
The jury eventually found for Leon on all three counts. It found that Bernardo borrowed $5 million and at the same time orally agreed to repay $2 million and Enrique orally agreed to pay $3 million for Leon’s interests. The jury also found that the defendants were unjustly enriched in the sum of $10 million.
The defendants again argued that there were inconsistencies in the verdicts and requested that the jury be so instructed and sent back to deliberate again, but the trial court denied the request. The defendants filed a motion for new trial or judgment notwithstanding the verdict, but the trial court denied the motion.
Leon then filed for prejudgment interest and entry of final judgment. At the hearing, the trial court sua sponte ruled that the final judgment would be entered on count III of the complaint, for unjust enrichment only, against both defendants jointly and severally. The court also reduced the award from $10 million to $5 million and granted prejudgment interest on the $5 million, using the selected date of funding, over the defendants’ objection. The court entered final judgment in favor of Leon for $5 million, plus prejudgment interest of $9,063,164.50, for a total of $14,063,164.50.

Analysis

We reverse the verdict and hold that Bernardo and Enrique are entitled to judgment as a matter of law because the evidence does not support the claims alleged in any of the three counts. Furthermore, the evidence does not support Leon’s claim of unjust enrichment.
The standard for reviewing relation-back pleadings is abuse of discretion. See Lasar Mfg. Co. v. Bachanov, 436 So.2d 236, 237 (Fla. 3d DCA 1983). In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the “reasonableness” test to determine whether the trial judge abused his discretion. Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. Id. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness. Id. Although it is well settled that a trial court has discretion to permit or refuse amendment to pleadings, this ruling can be overturned on appeal upon finding an abuse of discretion. See Lasar Mfg. Co., 436 So.2d at 237.

a. The Relation-Back Doctrine

On appeal, Bernardo and Enrique contend that 1) the verdicts were against the manifest weight of the evidence; 2) permitting a new claim after fourteen years into litigation was error; 3) allowing highly prejudicial evidence to be injected into trial was error; and 4) the Final Judgment based on the jury’s inconsistent verdicts was error.
The claims alleged in the fifth amended complaint did not relate back. Further, the claim for unjust enrichment warrants reversal because Leon’s $5 million investment in a jointly-held corporation only indirectly benefited one of the appellants. Because reversal of the first two issues renders the last two issues moot, we need not review them here.
Florida law clearly states that in order for an amended pleading to survive a motion to dismiss after the statute of limi *1152 tations has passed, an amended complaint must relate back to the original pleading made before the expiration of the statute of limitations. See Fla. R. Civ. P. 1.190(c). To relate back, the pleading must not state a new cause of action. See Daniels v. Weiss, 385 So.2d 661, 663 (Fla. 3d DCA 1980). “[W]hen a cause of action set forth in an amended pleading in a pending litigation is new, different, and distinct from that originally set up, there is no relation back.” Trumbull Ins. Co. v. Wolentarski, 2 So.3d 1050, 1055 (Fla. 3d DCA 2009) (quoting Livingston v. Malever, 103 Fla. 200, 137 So. 113, 118 (1931)).
Count II is reversed because the statute of limitations bars it from being raised for its failure to relate back. In his Fifth Amended complaint, Leon claimed that at the same time Bernardo borrowed money from him, Enrique orally promised Leon $5 million in exchange for Leon’s release of all of his interests in these companies. This new claim of an oral promise to pay him $5 million for his interests in the companies was asserted for the first time in 2008, fourteen years after the alleged agreement was made. Because this amendment to the complaint was not provided until after the first trial, the amendment does not relate back to the original pleading. Thus, the applicable four-year statute of limitations bars this claim.
Furthermore, the Fifth Amended complaint added a new cause of action that had not been raised until fourteen years after the original pleading. The alleged oral promise by Enrique to repay Leon his $5 million was new, different, and distinct from that which was originally pled. See Trumbull, 2 So.3d at 1055. Thus, because the fifth amended complaint states a new action, it cannot relate back as a matter of law. See Daniels, 385 So.2d at 663. Accordingly, we conclude that the trial court abused its discretion when it allowed Leon’s fifth amended complaint because it should have been barred by the applicable four-year statute of limitations.

b. Unjust Enrichment

Count III, which held the defendants liable for unjust enrichment, was in error as well because the evidence introduced at trial does not support such a claim. Leon claimed in his fifth amended complaint that he advanced $5 million to Bernardo and Enrique, conferring a benefit upon them which they “knowingly and voluntarily accepted and then retained.” However, the evidence at trial indicates these monies were used to fund legal entities, not individuals. “The elements of an unjust enrichment claim are: ‘a benefit conferred upon a defendant by the plaintiff, the defendant’s appreciation of the benefit, and the defendant’s acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.” Fla. Power Corp. v. City of Winter Park, 887 So.2d 1237, 1241-42 n. 4 (Fla.2004). Unjust enrichment requires that the benefit be direct to the litigant. See Peoples Nat’l Bank of Commerce v. First Union Nat’l Bank of Fla. N.A., 667 So.2d 876, 879 (Fla. 3d DCA 1996).
 Here, there was no unjust enrichment because there was no benefit conferred to either Enrique or Bernardo individually. Leon admitted he paid his father $2,917,200 of the $5 million. Bernardo and Enrique did not receive this benefit. Leon further admitted he paid $1,794,999 into two foreign corporations in which he held a one-third interest. Enrique held the remaining two-thirds interest in these corporations, while Bernardo had nothing to do with them at all. Thus, there was no evidence of any benefit to Enrique or Bernardo individually, only an indirect benefit through a corporation of which Enrique *1153 happened to be an owner. Unjust enrichment requires that the benefit be direct to the litigant, but that was not the case here.

Conclusion

We therefore reverse because Leon’s fifth amended complaint stated a new cause of action which did not relate back to the original pleadings, and was thus time-barred by the applicable statute of limitations. Additionally, we conclude that Bernardo and Enrique were not unjustly enriched because Leon’s investment of $5 million into a jointly-held corporation did not directly benefit either Bernardo or Enrique, and only indirectly benefited Enrique through a corporation which he happened to partially own. Consequently, Bernardo and Enrique are entitled to judgment as a matter of law because the evidence does not support Leon’s claims. We reverse and remand to the trial court so that judgment can be entered for Bernardo and Enrique.
Reversed and remanded for proceedings consistent with this opinion.