137 So.2d 222 (1962)
Joe COHEN and Julius Jay Perlmutter, Petitioners,
v.
MOHAWK, INC., a Florida Corporation, Ansan, Inc., a Florida Corporation, and Canoga, Inc., a Florida Corporation, Respondents.
No. 31251.
Supreme Court of Florida.
January 24, 1962.
Rehearing Denied February 19, 1962.
Sibley, Grusmark, Barkdull & King and James Lawrence King, III, Miami Beach, for petitioners.
Thomas H. Anderson, Miami, for respondents.
HOBSON, Justice.
This case is before us on a petition for writ of certiorari to the District Court of *223 Appeal, Third District. Petitioner asserts that the decision of the District Court, reported as Mohawk v. Cohen, Fla.App., 125 So.2d 909, is in direct conflict with the decision of this Court in the case of McGehee Lumber Company v. Tomlinson, 66 Fla. 536, 63 So. 919. Upon the basis of this conflict, which will be discussed hereinafter, we have granted the petition for writ of certiorari and have taken jurisdiction of the cause.
The petitioners here, who were the plaintiffs in the trial court, are real estate brokers. In the summer of 1950 they were employed by the sole stockholder of the respondent corporations to find a single lessee for a term of ten years for a number of hotel and apartment properties owned by the respondent corporations. The testimony of the petitioner, Perlmutter, disclosed that at the time of the employment the parties had agreed to a 5% commission for brokerage service to be paid at the closing. Within a short time, the petitioners produced a lessee satisfactory to the respondents. At the time of closing the owner of the respondent corporations requested that the petitioners accept their commission over the ten-year term of the lease rather than in a lump sum. The petitioners agreed to do this and a memorandum was thereupon prepared and signed by the petitioners and by an agent of the respondent corporations. The agreement, which was also quoted in the opinion of the District Court provided, in part:
"Regarding the commissions earned in connection with services rendered by the undersigned, as brokers, in the matter of negotiating a lease on your behalf, * * *:
"`You are to pay the total amount of $137,600 as commission for these services.
"`It is understood and agreed that the commissions are to be paid over a period of ten years in installments of $13,750 per year as and when the rent is collected by you as lessor under the terms of the lease; it being understood that the first payment shall be made at the time of the closing.
"`In accordance with the understanding and agreement of the undersigned parties, this shall act as your authorization to disburse the above stated commission payments in the following manner:
"`50% of the amount due in each event shall be paid to the order of Julius Jay Perlmutter Associates, Inc. and the remaining
"`50% to the order of Joe Cohen.
"`It is specifically understood and agreed that any commissions due or any commissions remaining unpaid under this lease, such amounts of commissions due or remaining unpaid shall automatically become due and payable in full, in the event of the sale by you, your heirs or assigns, of any of the above leased properties.'"
The lessee went into possession of the demised properties and paid rent under the terms of the lease for approximately eight years. During this time, the petitioners received payments toward their commission in installments pursuant to the agreement quoted above. In February, 1958, however, the lessee informed the respondents that it was unable to pay the taxes and rent due under the lease, and the demised properties were therewith surrendered. Thereafter, the respondents made no further payments to the petitioners on the balance of their commission.
In August, 1958, the petitioners instituted this action to recover the balance alleged to be due them on their commission. In their amended complaint, it was alleged in essence that petitioners had been employed by respondents to procure a lessee for the properties in question, and that pursuant to such employment, a lessee satisfactory to the respondents was procured. It was then alleged that the "Plaintiffs, having fully performed the service for the defendant corporations for which they were *224 employed", entered into the agreement with the respondents, which is quoted, in part, above. As previously pointed out, the petitioner Perlmutter testified at the trial that the original agreement was that the commission would be paid in cash at the time of the closing, and that the first mention of paying the commission in installments was made at the time of the signing of the lease. At this time, according to the testimony of Perlmutter, the petitioners had fully performed everything required of them under the terms of their employment.
Trial of the cause was without a jury, and at the conclusion thereof the trial judge entered final judgment in favor of the petitioners for the balance of the commission alleged to be due them. The final judgment contained no findings of fact.
On appeal, the District Court of Appeal, Third District reversed and remanded with directions to enter judgment for the defendants, holding that the case was governed by the rule enunciated in Ballas v. Lake Weir Light & Water Co., 100 Fla. 913, 130 So. 421. The court stated:
"The case at bar presents a situation where the broker was proceeding on a contract under which his commission was to be paid out of a particular fund `as and when the rent is collected.' Since the fund did not materialize, the broker could not recover on his contract."
The district court, in its opinion, unquestionably recognized and extracted from the Ballas case a correct principle of law. That principle, as quoted by the district court, is:
"`A contract or promise to pay may be restricted to a particular fund, so as to make the raising or the sufficiency of the fund a condition precedent to the liability, and in such case the promise cannot be enforced until the fund is realized, unless the failure to realize or collect the fund from which payment is made is due to the neglect, or to the unreasonable refusal to act, of the promisor, or is otherwise attributable to him.'" (Emphasis that of the District Court)
It was held that since, in the instant case, the termination of the lease was not due to the fault or neglect of the respondents, petitioners were not entitled to recover under the terms of their agreement.
Notwithstanding the announcement by the district court of a correct rule of law, there was error in the application of that rule to the facts of the instant case, and the result reached by the application of that rule creates a direct conflict on the same point of law with our decision in the case of McGehee Lumber Company v. Tomlinson, supra. The existence of such a conflict is, moreover, manifestly suggested on the face of the district court's opinion, wherein, in quoting from the agreement, the commissions are referred to as "earned", and the services are described as "rendered". This reference to the completed performance by the petitioners of their undertaking points up the marked similarity between the instant cause and the McGehee Lumber Company case. In the latter case it appeared that the plaintiff, a real estate broker, having produced a purchaser acceptable to the defendant vendor, voluntarily agreed that his commission for effecting the sale might be paid to him in installments as and when the purchaser made deferred payments on the purchase price. The vendor repudiated the broker's claim to the commission, and the broker instituted an action to recover the entire amount of the commission. The vendor defended, in part, on the ground that the action was premature in that a portion of the cash payment, out of which the commission was to be paid, had not been received by the vendor. In disposing of this defense, the court stated:
"This contention is untenable. The plaintiff's entire work was done and completed when he produced to the defendant a customer or buyer who was ready, able, and willing to purchase the lands of the defendant at the price at which he was instructed to sell them, and who did purchase them at such price, and he then became entitled to his whole commission at the agreed per centum of the entire purchase price, without doing anything further on his part. If he afterwards voluntarily, and without any consideration other than a desire on his part to be accommodating towards the defendant, agreed to postpone the payment of his commission as and until the deferred payments of the purchase price were made, provided such commissions were promptly paid as and whenever a deferred payment of the purchase price was made, he became completely absolved from his agreement, made without consideration, to postpone the collection of his commission until the deferred payments of the purchase price were made, as soon as a deferred payment of the purchase price was made by the purchasers without a correspondingly prompt payment to the plaintiff by the defendant of a sum equal to five per centum of such deferred payment so made. More particularly was the plaintiff absolved from this agreement, made without consideration, to wait for his commission until the deferred payments of the purchase price were made when the defendant repudiated its agreement with him in toto for any commission whatsoever, and denied that it was liable to him for any commission whatsoever on the sale of said lands, and flatly refused to pay him anything. The plaintiff then had the right to sue for his entire commission earned by the sale of the lands, and to recover therefor, if he could show himself entitled thereto by his proofs, without regards to payments of the purchase price agreed between the defendant and the purchasers to be deferred."
*225 The marked similarity of the facts of the McGehee Lumber Company case and those of the case sub judice cannot be gainsaid. Of course, in the instant case, the vendor has not repudiated in toto the brokers' right to their commission, but has denied liability only as to that portion which was to be paid "as and when" the last two years of rental payments were to have been paid. However, this difference is of no moment in light of the holding in the McGehee Lumber Company case that the supplemental agreement by the broker to accept his commission "as and when" deferred payments were made, was without consideration. It is apodictic that such an agreement, made without consideration, is unenforceable.
It should be kept in mind that the judgment of the trial court reached the district court clothed with a presumption in favor of its validity. 1 Fla.Law and Practice, Appeals § 152, 2 Fla.Jur., Appeals, § 314, and authorities cited therein. Accordingly, if upon the pleadings and evidence before the trial court, there was any theory or principle of law which would support the trial court's judgment in favor of the plaintiffs, the district court was obliged to affirm that judgment.
In the opinion of this court, there are contained in the record facts which, if believed by the trial judge, are sufficient to support a judgment for the petitioners under the rule of law announced in McGehee Lumber Company v. Tomlinson, supra. This being the case, the district court erred in failing to indulge the presumption in favor of the validity of the lower court's judgment. Moreover, in reversing the judgment, a direct conflict was thereby created with the decision in the McGehee Lumber Company case.
For the foregoing reasons it follows that the decision of the district court should be, and it hereby is quashed with instructions to remand the cause to the circuit court for reinstatement of its judgment in favor of the petitioners.
It is so ordered.
ROBERTS, C.J., and TERRELL, THOMAS, DREW, THORNAL and O'CONNELL, JJ., concur.