# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-1482
Lower Tribunal No. 2020-CA-007792-O

_____

CHARLES RUFFENACH,

Appellant,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for AMERIQUEST MORTGAGE SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-R8, RAYMOND LOZANO, ALILI RIHKRAND, ISLEBROOK AT MEADOW WOODS HOMEOWNERS' ASSOCIATION, INC., ORANGE COUNTY, and CIT FINANCIAL, INC.,

Appellees.

_____

Appeal from the Circuit Court for Orange County.
Vincent Falcone, III, Judge.

March 20, 2026

MIZE, J.

Appellant, Charles Ruffenach, appeals the trial court's final judgment in favor of Appellee, Deutsche Bank National Trust Company, including the trial court's award of attorneys' fees to Appellee that was contained within the final

judgment.[1]  We write only to address the trial court's award of attorneys' fees, which we reverse.  We affirm the remainder of the final judgment without discussion.

For more than sixty years, all of our sister courts have held that a trial court cannot enter an award of attorneys' fees pursuant to a statute, rule, or contractual provision providing for an award of attorneys' fees without first conducting an evidentiary hearing and receiving testimony from an expert witness regarding the reasonableness of the fees.  With the deepest respect to our sister courts, we believe they were wrong in imposing both of these requirements.  No statute or rule imposes these requirements.  The Florida Supreme Court has never held that either of these requirements must be satisfied for a trial court to award attorneys' fees.  The federal courts do not require an evidentiary hearing or expert testimony as a prerequisite to an award of attorneys' fees.  There is simply no legal authority mandating either of these requirements, nor is there strong logic or policy grounds for imposing them.   For these reasons, and as explained in more detail below, we hold that a trial court need not always conduct an evidentiary hearing or receive expert testimony concerning the reasonableness of attorneys' fees before granting an award of attorneys' fees pursuant to a statute, rule, or contractual provision providing for such an award.  Because this holding is in conflict with decisions of

_____

[1] This case was transferred from the Fifth District Court of Appeal to this Court on January 1, 2023.

2

all of our sister courts, pursuant to Article V, Section 3(b)(4) of the Florida Constitution, we certify this decision to be in direct conflict with the decisions listed at the conclusion of this opinion.

## I.      History of Attorneys' Fees in Florida

### (a)      Expert Witness Requirement

As noted above, no statute or rule requires Florida courts to conduct an evidentiary hearing or receive expert testimony before granting an award of attorneys' fees pursuant to a statute, rule, or contractual provision providing for such an award. *See* Robert J. Hauser, Raymond E. Kramer III & Patricia A. Leonard, *Is Expert Testimony Really Needed in Attorneys' Fees Litigation? Island Hoppers' Call for Change and Other Ways to Reduce the Burdens of Fees Hearings*, 77 Fla. B. J., Jan. 2003, at 38, 40.  The Fourth and Fifth Districts have both noted that the expert witness requirement was judicially created. *See Robin Roshkind, P.A. v. Machiela*, 45 So. 3d 480, 481 (Fla. 4th DCA 2010); *Sea World of Fla., Inc. v. Ace Am. Ins. Cos.,* 28 So. 3d 158, 161 (Fla. 5th DCA 2010); *Schwartz v. Bloch*, 88 So. 3d 1068, 1071 (Fla. 4th DCA 2012).  As Judge Nardella noted in *CED Capital*, that moment of creation occurred in a case from the Second District, *Lyle v. Lyle*, 167 So. 2d 256 (Fla. 2d DCA 1964). *CED Cap. Holdings 2000 EB, LLC v. CTCW-Berkshire Club, LLC*, 363 So. 3d 192, 196 (Fla. 6th DCA 2023); *see also* Hauser, Kramer III & Leonard, *Is Expert Testimony Really Needed*, *supra*, at

3

40 (explaining that *Lyle* created the expert witness requirement); *Island Hoppers, Ltd. v. Keith*, 820 So. 2d 967, 972 (Fla. 4th DCA 2002) (noting that the expert witness requirement "has existed since at least the 1960s" and citing *Lyle*), *disapproved of on other grounds by Sarkis v. Allstate Ins. Co.*, 863 So. 2d 210 (Fla. 2003); *Sea World*, 28 So. 3d at 161 n.3 ("In Florida, it appears that the rule requiring corroborative expert witness testimony on attorney's fees originated in *Lyle v. Lyle*, 167 So. 2d 256 (Fla. 2d DCA 1964).").

Importantly, to justify imposing an expert witness requirement for an award of attorneys' fees, the *Lyle* court cited no legal authority. Instead, *Lyle* merely relied on "the principle that the value of personal services is proven by expert witnesses," without stating where that principle came from. 167 So. 2d at 257. *Lyle* also asserted, again without authority, that "the self-serving nature of the testimony given by the attorney who performs the services precludes the court from making an award based solely on his testimony."[2] *Id*.

After the Second District issued *Lyle*, other district court decisions cited to *Lyle* for the proposition that expert testimony concerning the reasonableness of attorneys' fees is required to support an award of attorneys' fees. *See, e.g., Thoni v. Thoni*, 179 So. 2d 420, 421–22 (Fla. 3d DCA 1965); *Ortiz v. Ortiz*, 211 So. 2d 243,

---

[2] The Second District later partially receded from *Lyle* to hold that a trial court can enter an award of attorneys' fees without expert testimony as long as the party against whom the award is granted does not object to the lack of an expert. *Lafferty v. Lafferty*, 413 So. 2d 170, 171 (Fla. 2d DCA 1982).

245 (Fla. 3d DCA 1968); *Lamar v. Lamar*, 323 So. 2d 43, 44 (Fla. 4th DCA 1975); *Nivens v. Nivens*, 312 So. 2d 201, 202 (Fla. 2d DCA 1975); *Mullane v. Lorenz*, 372 So. 2d 168, 168 (Fla. 4th DCA 1979); *Lee v. Gilbert, Silverstein & Hellman, P.A.*, 350 So. 2d 1147, 1147 (Fla. 3d DCA 1977); *Cohen v. Cohen*, 400 So. 2d 463, 465 (Fla. 4th DCA 1981). Other decisions then cited to those opinions, and the rule that expert testimony is required to support an award of attorneys' fees became universal throughout Florida. *See Mitchell v. Flatt*, 344 So. 3d 588, 590 (Fla. 2d DCA 2022); *Rakusin v. Christiansen & Jacknin, P.A.*, 863 So. 2d 442, 444 (Fla. 4th DCA 2003); *Loftus v. Fairchild*, 395 So. 3d 679, 682 (Fla. 2d DCA 2024); *Saussy v. Saussy*, 560 So. 2d 1385, 1386 (Fla. 2d DCA 1990); *Snow v. Harlan Bakeries, Inc.*, 932 So. 2d 411, 413 (Fla. 2d DCA 2006); *Yakubik v. Bd. of Cnty. Comm'rs of Lee Cnty.*, 656 So. 2d 591, 591–92 (Fla. 2d DCA 1995); *Wells Fargo Bank, N.A. v. Meininger*, 360 So. 3d 464, 465 (Fla. 2d DCA 2023); *Cooper v. Cooper*, 406 So. 2d 1223, 1224 (Fla. 4th DCA 1981); *Tanner v. Tanner*, 391 So. 2d 305, 305 (Fla. 4th DCA 1980); *Brake v. Murphy*, 736 So. 2d 745, 747 (Fla. 3d DCA 1999); *Seitlin & Co. v. Phoenix Ins. Co.*, 650 So. 2d 624, 627 (Fla. 3d DCA 1994); *Cozzo v. Cozzo*, 186 So. 3d 1054, 1055 (Fla. 3d DCA 2015); *Trumbull Ins. Co. v. Wolentarski*, 2 So. 3d 1050, 1055 (Fla. 3d DCA 2009); *Morton v. Heathcock*, 913 So. 2d 662, 669 (Fla. 3d DCA 2005); *Rodriguez v. Campbell*, 720 So. 2d 266, 267 (Fla. 4th DCA 1998); *Island Hoppers*, 820 So. 2d at 970–71;

5

*Robin Roshkind*, 45 So. 3d at 481; *Nants v. Griffin*, 783 So. 2d 363, 366 (Fla. 5th DCA 2001); *Markham v. Markham*, 485 So. 2d 1299, 1301 (Fla. 5th DCA 1986); *Ghannam v. Shelnutt*, 199 So. 3d 295, 299–300 (Fla. 5th DCA 2016); *Schwartz*, 88 So. 3d at 1071; *Rodriguez v. Altomare*, 261 So. 3d 590, 591–92 (Fla. 4th DCA 2018); *Pridgen v. Agoado*, 901 So. 2d 961, 962 (Fla. 2d DCA 2005); *Silva v. Hernandez*, 595 So. 2d 230, 230 (Fla. 3d DCA 1992), *rev'd on other grounds by*, 612 So. 2d 1377 (Fla. 1993).

Since *Lyle*, other districts have occasionally discussed the logic behind the rule requiring expert testimony as to the reasonableness of attorneys' fees, and, as the Second District did, they justified the rule on the basis that the self-serving nature of testimony given by an attorney who performed services for which attorney's fees are sought precludes a trial court from making an award based solely on that attorney's testimony. *See Wilson v. Wilson*, 362 So. 2d 1030, 1030 (Fla. 3d DCA 1978); *Mullane*, 372 So. 2d at 168–69; *Benitez v. Benitez*, 337 So. 2d 408, 409 (Fla. 4th DCA 1976). The Third and Fourth Districts both reasoned that the self-serving nature of testimony given by an attorney who performed services for which attorney's fees are sought precludes such testimony from being considered competent, substantial evidence to support the fee award. *See Wilson*, 362 So. 2d at 1030; *Benitez*, 337 So. 2d at 409; *see also Cohen*, 400 So. 2d at 465 ("We have previously held that an award for attorney's fees requires competent

6

substantial evidence. Implicit in this is the requirement that the value of services be proven by expert witnesses." (citations omitted)).

In more recent cases, however, the Fourth District has repeatedly questioned the legal basis and wisdom of the requirement for expert testimony regarding the reasonableness of attorneys' fees. In *Island Hoppers*, the Fourth District expressed doubt as to the value of expert testimony concerning attorneys' fees and also noted that trial judges themselves are highly experienced in litigation and very often have knowledge concerning attorneys' fees that is equal to or exceeding that of experts:

> Though Florida courts have long required the corroborative testimony of an expert "fees witness," we question whether the rule is always the best, or most judicious, practice. We note this practice has existed since at least the 1960s. *See, e.g.*, *Lyle v. Lyle*, 167 So. 2d 256 (Fla. 2d DCA 1964). Yet, we note as our profession matures and evolves, as it has over the past forty years, and continues to do so, our trial judges have become highly experienced in all aspects of litigation, often with knowledge equal to, or in some cases far superior to, that of those attorneys who are called upon to provide expert testimony as a "fees witness." Our trial judges see attorneys representing all levels of skill and experience in their courtroom; it is not uncommon for a trial judge to conduct multiple fee hearings practically every week. At the most basic level, we fail to see what, if any, "guidance" these "fees experts" actually provide to the well-versed trial judges of this state, who ultimately have the responsibility to determine, in their relatively unfettered discretion, whether the hours sought are reasonable, and what hourly fee(s) should be applied.

820 So. 2d at 972. In his concurrence in *Island Hoppers*, Judge Gross emphasized this point further, stating, "After six months on the civil bench, a judge has heard enough testimony to qualify as an expert on the reasonable value of legal fees in

7

his or her community. The trial judge has also had the benefit of observing the legal work first hand in the case in which fees are sought." *Id*. at 977 (Gross, J., concurring specially). Since *Island Hoppers*, the Fourth District has reiterated this sentiment multiples times. *See Rakusin*, 863 So. 2d at 444; *Schwartz*, 88 So. 3d at 1071. In *Robin Roshkind*, the Fourth District expanded on its analysis from *Island Hoppers* by additionally noting that a fee expert is usually little more than a friend of the lawyer seeking fees willing to vouch for his or her friend's fees:

> While the reasonableness of fees charged is, and should remain, an important consideration, it is a factor that may not mandate an expert independent of the litigating attorneys and the trial judge.
> . . . .
> We live in a litigation era where contractual and statutory fees are commonplace and no longer the exception. Indeed, attorney's fees seem to drive some litigation where the underlying dispute pales in comparison to the potential of a fee award. Trial judges are daily confronted with requests for attorney's fees. They are aware of the going rates in their communities for lawyer's services, and whether the time expended is reasonable. Eliminating the need for an independent expert witness does not eliminate the requirement of reasonableness. Lawyers and parties can still argue about the reasonableness of the rate charged and the time expended.
>
> There is little reason to simply increase litigation costs by requiring another lawyer to testify as an expert. After all, each party usually chooses a lawyer friend, who will willingly testify that the rate and time expended are either reasonable or unreasonable. The trial court is ultimately left to decide the reasonableness of the rate charged and time expended, and then to tax the cost of the expert witness against the losing party.

45 So. 3d at 482.

In *Sea World*, the Fifth District expressly "join[ed] the Fourth District Court of Appeal in questioning the continued need for th[e] judicially-created rule" that expert testimony is required to support an award of attorneys' fees. 28 So. 3d at 161. The *Sea World* court noted that the rule rests on "shaky theoretical grounds" and that "claimants expend time and money to retain fee experts, even in those cases where their testimony is likely to be of little or no assistance." *Id*. at 161, 161 n.3. Indeed, "expert testimony in fees cases is often nothing more than a rubber stamp of the billing and time records submitted to the court by the party seeking fees." *Id*. at 161 (quoting Hauser, Kramer III & Leonard, *Is Expert Testimony Really Needed*, *supra*, at 40 (internal alterations omitted)).

**(b)      Evidentiary Hearing Requirement**

All of our sister courts have held that a trial court must hold an evidentiary hearing on a request for attorneys' fees unless the parties waive their right to a hearing. *See Guyton v. Leonard Dewey Wilkinson Action Welding Supply, Inc.*, 707 So. 2d 885, 886 (Fla. 1st DCA 1998); *Zumpf v. Countrywide Home Loans, Inc.*, 43 So. 3d 764, 766 (Fla. 2d DCA 2010); *Wavra v. Nat'l Credit Union Admin. Bd.*, 86 So. 3d 609, 611 (Fla. 2d DCA 2012); *Wagner v. Bank of Am., N.A.*, 143 So. 3d 447, 448 (Fla. 2d DCA 2014); *McCammond v. E. Coast Props., LLC*, 296 So. 3d 1007, 1008 (Fla. 2d DCA 2020); *United Auto. Ins. Co. v. Life Med. Ctr. Corp.*, 324 So. 3d 1034, 1034–35 (Fla. 3d DCA 2021); *United Auto. Ins. Co. v. Pro. Med.*

9

*Grp., Inc.*, 318 So. 3d 1261, 1263 (Fla. 3d DCA 2021); *United Auto. Ins. Co. v. Multimed Care, Inc.*, 322 So. 3d 235, 235–36 (Fla. 3d DCA 2021); *United Auto. Ins. Co. v. Multimed Care, Inc.*, 322 So. 3d 237, 238 (Fla. 3d DCA 2021); *Brown v. Brown*, 473 So. 2d 844, 845 (Fla. 4th DCA 1985); *Minkoff v. Caterpillar Fin. Servs. Corp.*, 103 So. 3d 1049, 1052 (Fla. 4th DCA 2013); *Petrovsky v. HSBC Bank, USA*, 185 So. 3d 700, 701 (Fla. 4th DCA 2016); *Tervil v. U.S. Bank Nat'l Ass'n*, 204 So. 3d 580, 581 (Fla. 4th DCA 2016); *Fogarty v. Trust*, 231 So. 3d 479 (Fla. 4th DCA 2017); *Forte v. All Cnty. Towing Inc.*, 336 So. 3d 316, 319–20 (Fla. 4th DCA 2022); *Poky Mgmt., LLC v. Solutrean Inv. Grp., LLC*, 390 So. 3d 753, 758 (Fla. 5th DCA 2024). We can find no specific origin of the requirement to hold an evidentiary hearing on a motion for attorneys' fees. However, it flows naturally from the requirement to receive expert testimony. In order to hear expert testimony, the court must have an evidentiary hearing.

**(c)     The Florida Supreme Court**

The Florida Supreme Court has never held that expert testimony and an evidentiary hearing are required for a trial court to grant an award of attorneys' fees, and it has never held that they are not required. The Court's seminal case governing awards of attorneys' fees in Florida is *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985), wherein the Florida Supreme Court "adopted the federal lodestar approach for computing reasonable attorneys' fees

10

and articulated specific guidelines to aid trial judges in the setting of attorneys' fees." *CED Cap.*, 363 So. 3d at 196. "The first step in the lodestar analysis requires the court to determine the number of hours reasonably expended on the litigation." *Rowe*, 472 So. 2d at 1150. "The second half of the equation, which encompasses many aspects of the representation, requires the court to determine a reasonable hourly rate for the services of the prevailing party's attorney." *Id*. "The number of hours reasonably expended, determined in the first step, multiplied by a reasonable hourly rate, determined in the second step, produces the lodestar, which is an objective basis for the award of attorney fees." *Id*. at 1151. "Once the court arrives at the lodestar figure, it may add or subtract from the fee based upon a 'contingency risk' factor and the 'results obtained.'" *Id*. While *Rowe* provided the method for calculating a fee award, *Rowe* did not say that a trial court must conduct an evidentiary hearing or receive expert testimony in order to make any of the determinations necessary to complete that calculation.[3]

The only instance we have found in which the Florida Supreme Court directly addressed these issues is in *Crittenden Orange Blossom Fruit v. Stone*, 514 So. 2d 351 (Fla. 1987). In *Crittenden*, the Court stated that "it is well settled that

---

[3] As shown by the cases cited above, our sister courts adopted the requirement for an expert to testify regarding the reasonableness of attorneys' fees sought prior to *Rowe*. Since *Rowe*, our sister courts have required the expert testimony to speak to the factors identified in *Rowe*, i.e., the reasonableness of the number of hours expended and the attorney's hourly rate. *See, e.g., Mitchell*, 344 So. 3d at 590; *Rakusin*, 863 So. 2d at 444; *Nants*, 783 So. 2d at 366.

the testimony of an expert witness concerning a reasonable attorney's fee is necessary to support the establishment of the fee." *Id*. at 352–53. However, while this statement directly addresses whether a court must receive expert testimony, it was also clearly dictum. The actual holding of *Crittenden* was that an evidentiary hearing and expert testimony are ***not*** required in an attorneys' fees hearing in a workers' compensation case. *Id*. at 353 ("For much the same reason that we distinguish worker's compensation proceedings from other civil cases with respect to the taxing of the fee of the lawyer who testifies on reasonableness, we now conclude that it should no longer be necessary in every instance to have a hearing only for the purpose of proving the amount of reasonable attorney's fees in worker's compensation proceedings. We hold that the deputy commissioner may, upon consideration of a detailed affidavit of the claimant's attorney concerning the time spent on the case, award a reasonable attorney's fee without the necessity of an affidavit or the testimony of an expert witness concerning the amount of the fee."). "Any statement of law in a judicial opinion that is not a holding is dictum." *Pedroza v. State*, 291 So. 3d 541, 547 (Fla. 2020). Dictum is without force as precedent. *Johnson v. State*, 397 So. 3d 626, 641 (Fla. 2024) (citing *State ex rel. Biscayne Kennel Club v. Bd. of Bus. Reg. of Dep't of Bus. Reg. of State*, 276 So. 2d 823, 826 (Fla. 1973)). While we are bound to follow all holdings of the Florida Supreme Court, we are not bound by dicta contained in the Supreme Court's

12

opinions. *Regala v. McDonald*, 397 So. 3d 742, 752 (Fla. 6th DCA 2024) (citing *Churchill v. DBI Servs., LLC*, 361 So. 3d 896, 904 (Fla. 1st DCA 2023) ("We are not bound by dicta, only holdings.")).

The Florida Supreme Court's decisions on adjacent issues likewise provide no binding holding that resolves the question of whether a trial court must receive expert testimony or conduct an evidentiary hearing before making an award of attorneys' fees pursuant to a statute, rule or contractual provision that provides for such an award. In *Sierra v. Sierra*, the Court held that appellate courts cannot determine the amount of an award of attorneys' fees for an appeal "without an evidentiary basis." 505 So. 2d 432, 433 (Fla. 1987). While the Court noted that the Third District (from which the case was appealed) required expert testimony to support an award of attorneys' fees, the Court also approvingly quoted its own prior opinion, *Lee Engineering & Construction Co. v. Fellows*, 209 So. 2d 454, 457 (Fla. 1968), in which the Court stated that "the burden is on the moving party to show by appropriate proof, through testimony, depositions, *affidavits or otherwise*, the services and benefits which he has rendered and to which he is reasonably entitled." *Id*. at 433–44 (emphasis added). The Court then stated that appellate courts can either remand the issue of the amount of attorneys' fees awards to trial courts or "provide a method for receiving evidence *by affidavit or otherwise* on this issue in the appellate court." *Id*. at 434 (emphasis added). Thus,

13

in *Sierra*, which admittedly concerned appellate fee awards rather than trial fee awards, the Court appears to have acknowledged that the amount of a fee award – at least in the appellate context – can be determined utilizing affidavits rather than an evidentiary hearing.

In *Barach v. Giblin*, the Florida Supreme Court addressed attorneys' fees in another context – a suit by an attorney to recover attorneys' fees from a former client. 164 So. 831 (Fla. 1935). In that case, the Court stated that "[t]he testimony of duly qualified witnesses given as expert opinion evidence is admissible, and may be offered in support of the issue as to the value of the services of an attorney, ***though such issues may be proven by other evidence*** and other circumstances affecting it." *Id*. at 833 (emphasis added). The Court also stated that "[a]n attorney interested in the outcome is competent to give evidence as to the value of his services, his legal knowledge, and his professional experience." *Id*. While these statements were made in a different context, and we would not find them to bind our decision in this case given the different nature of the suit at issue, these statements certainly counter the notion that only an expert witness not interested in a lawsuit is competent to testify as to the market value of an attorney's services.

In sum, we have found no binding holding from the Florida Supreme Court regarding whether a trial court must receive expert testimony or conduct an evidentiary hearing before making an award of attorneys' fees pursuant to a statute,

14

rule, or contractual provision that provides for such an award. To the extent we might glean guidance from the Court's dicta and decisions on related issues, they seem to go both ways.

## II.     Analysis from First Principles

In the absence of a binding holding from the Florida Supreme Court, we decide whether a trial court must receive expert testimony and conduct an evidentiary hearing before making an award of attorneys' fees according to first principles. *CED Cap.*, 363 So. 3d at 195. We find that neither expert testimony nor an evidentiary hearing is *always* required before a trial court can determine the amount of an award of attorneys' fees.

### (a)     Expert Testimony

As noted above, no statute or rule requires Florida courts to receive expert testimony before granting an award of attorneys' fees pursuant to a statute, rule, or contractual provision providing for such an award. The only legal rationale offered by our sister courts for the expert witness requirement is that awards of attorneys' fees must be based on competent, substantial evidence, and that the self-serving nature of testimony given by an attorney who performed services for which attorney's fees are sought regarding the reasonableness of those fees precludes such testimony from being considered competent, substantial evidence regarding the reasonableness of the fees. *See Wilson*, 362 So. 2d at 1030; *Mullane*, 372 So.

2d at 168–69; *Benitez*, 337 So. 2d at 409; *Cohen*, 400 So. 2d at 465.  However, as Judge Gross noted in his concurrence in *Island Hoppers*, this rationale "ignores the basic precept of our adversary system that the credibility of testimony is best resolved by the finder of fact." 820 So. 2d at 976 (Gross, J., concurring). "[E]vidence that is otherwise admissible is not prohibited because it is 'self-serving.'  Rather, the trier of fact simply takes into consideration the self-serving nature of the testimony in determining the weight that it should be given." *Sea World*, 28 So. 3d at 161; *see also* 98 C.J.S. Witnesses § 702 (2025) ("A showing of the bias or interest of a witness goes to the credibility of the witness and the weight of the testimony, not its admissibility or sufficiency.").

We have found no other context in which Florida courts have held that the otherwise admissible testimony of a biased witness cannot constitute legally sufficient evidence – and we decline to follow our sister courts in creating such a rule solely for awards of attorneys' fees.[4]

Moreover, we agree with the Fourth and Fifth Districts – and we believe it is obvious – that trial judges are themselves highly experienced in attorneys' fees and

---

[4] As we did in *CED Capital*, we note our view that the trial court's evidentiary standard is more precisely stated as whether or not the evidence is "legally sufficient," while the term "competent, substantial evidence" most often refers to an appellate standard of review. 363 So. 3d at 197 n.5 (citing *Rollins v. Rollins*, 336 So. 3d 1241, 1243 (Fla. 5th DCA 2022) (explaining that competent substantial evidence is an appellate standard of review, wherein appellate courts review a trial court's findings of fact to determine if those findings are supported by competent substantial evidence)).

16

are experts on the reasonableness of attorneys' fees, including the proper amount of hours for attorneys to expend on particular tasks in litigation and the reasonable hourly rates for attorneys. As the Fourth District noted, "it is not uncommon for a trial judge to conduct multiple fee hearings practically every week." *Island Hoppers*, 820 So. 2d at 972. As a result, "[t]hey are aware of the going rates in their communities for lawyer's services, and whether the time expended is reasonable." *Robin Roshkind*, 45 So. 3d at 482. Indeed, it is difficult to conceive of any expert a party could call that reviews more legal invoices or conducts more attorneys' fees hearings than a trial judge sitting in a civil division. Additionally, "[t]he trial judge also had the benefit of observing the legal work first hand in the case in which fees are sought," and so the trial judge is well-positioned to determine the quality of the work and the reasonable number of hours expended by the attorneys.[5] *Island Hoppers*, 820 So. 2d at 977 (Gross, J., concurring specially).

---

[5] We note that the federal courts likewise find expert testimony concerning attorneys' fees to be unnecessary because trial judges are themselves experts on the reasonableness of attorneys' fees. *See Ranco Indus. Prods. Corp. v. Dunlap*, 776 F.2d 1135, 1140 (3d Cir. 1985) ("A judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by particular attorneys. For this reason, the expert assistance that might be necessary when assessing the reasonableness of charges by other professionals is not required in determining reasonable attorneys' fees." (quoting *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 169 (3d Cir. 1973) (internal quotations omitted))); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) ("A court, however, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid

17

Since trial judges are experts on the reasonableness of hourly rates for attorneys and the reasonable number of hours for attorneys to expend on litigation, there is simply no need for parties to call expert witnesses to testify to what trial judges themselves are well-qualified to determine.

Moreover, in addition to the explicit statements from the Fourth and Fifth Districts noting that trial judges themselves are experts on attorneys' fees, the actual holdings of our sister courts' cases already impliedly concede that trial judges are themselves competent to determine the reasonableness of attorneys' fees – because trial judges are permitted to disregard the testimony of attorneys' fees experts and make their own determinations as to the reasonableness of attorneys' fees. *Southpointe Homeowners Ass'n v. Segarra*, 763 So. 2d 1186, 1187 (Fla. 4th DCA 2000) ("Trial judges, however, are not bound by unrebutted expert testimony. They can, based on their own familiarity with the type of litigation involved, determine that some of the work was unnecessary." (internal citation omitted)); *see also Baldwin Piano & Organ Co. v. Dote*, 740 So. 2d 1230, 1231 (Fla. 4th DCA 1999); Hauser, Kramer III & Leonard, *Is Expert Testimony Really Needed*, *supra*, at 40.  If trial judges may disregard expert testimony regarding the

of witnesses as to value." (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (internal quotations omitted))); *In re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir. 1978) ("Appellate courts, as trial courts, are themselves experts as to the reasonableness of attorneys' fees . . . ." (quoting *B-M-G Inv. Co. v. Cont'l Moss Gordin, Inc.*, 437 F.2d 892, 893 (5th Cir. 1971)) (internal alterations omitted)).

reasonableness of attorneys' fees and make their own determination as to reasonableness of the fees, then it cannot be true that expert testimony is necessary for a trial judge to determine the reasonableness of attorneys' fees. Even in our sister districts which currently require expert testimony to support an award of attorneys' fees, trial judges themselves are already permitted to act as an expert on attorneys' fees – albeit as an additional expert beyond those already called by the parties – whose expertise is sufficient to support an award of attorneys' fees.

Because trial judges themselves are experts on the reasonableness of hourly rates for attorneys and the reasonableness of time expended by attorneys on litigation, and the testimony of attorneys involved in a case can also constitute legally sufficient evidence regarding the reasonableness of attorneys' fees, we hold that a trial court need not always receive expert testimony before making an award of attorneys' fees pursuant to a statute, rule or contractual provision that authorizes such an award.

### (b)   Evidentiary Hearings

In determining whether an evidentiary hearing is always required before a trial court grants an award of attorneys' fees, we note that the federal courts utilize the same lodestar approach to attorneys' fees and base their attorneys' fees awards on evidence in the form of affidavits, and yet federal courts routinely grant attorneys' fees awards without evidentiary hearings. *See Norman v. Hous. Auth. of*

19

*City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (noting that federal trial courts have traditionally had the power to grant awards of attorneys' fees without evidentiary hearings and that "[i]t is perfectly proper to award attorney's fees based solely on affidavits in the record."); *Bailey v. Heckler*, 777 F.2d 1167, 1171 (6th Cir. 1985) ("We emphasize that an evidentiary hearing is not required in every instance of an application for attorney's fees."); *Shakey's Inc. v. Covalt*, 704 F.2d 426, 435 (9th Cir. 1983) (noting that attorneys' fee awards do not require evidentiary hearings).

From our reading of the federal cases, we conclude that federal courts do not typically hold evidentiary hearings on attorneys' fees because there are no material factual disputes to resolve at an evidentiary hearing when there are no factual disputes at all, or when the only factual disputes that exist concern matters on which the trial court itself is an expert, i.e., the reasonableness of hourly rates for attorneys and the reasonable number of hours expended by attorneys on particular tasks in litigation. In many instances, after the parties submit affidavits, there simply will not be any factual disputes other than whether the hourly rates of the attorneys for whom fees are sought are reasonable and whether the number of hours expended by those attorneys on particular litigation tasks were reasonable. In these instances, the federal courts do not require an evidentiary hearing, and we likewise see no reason to require a hearing in these circumstances either.

20

Accordingly, we hold that where there is no material factual dispute between the parties concerning a request for attorneys' fees other than whether the hourly rates of the attorneys for whom fees are sought are reasonable and whether the number of hours expended by those attorneys on particular litigation tasks were reasonable, trial courts are not required to conduct an evidentiary hearing on a request for attorneys' fees.

## III. What we do not hold.

We believe this opinion to be correct under the law. However, we understand that this opinion will be a sea change in civil litigation in Florida. For that reason, we aim to be extremely precise as to our holding and our reasoning. We hold in this case that a trial court is not *always* required to receive expert testimony before granting an award of attorneys' fees, and that a trial court need not conduct an evidentiary hearing on attorneys' fees when there are no material factual disputes beyond whether the hourly rates of the attorneys for whom fees are sought are reasonable and whether the number of hours expended by those attorneys on particular litigation tasks were reasonable. That does not mean that a trial court would never err by declining to hold an evidentiary hearing or by entering an award of attorneys' fees without expert testimony. It also does not mean that a party may not offer the testimony of an expert witness when one is not

21

required, either through an affidavit or at an evidentiary hearing when an evidentiary hearing is appropriate.

As noted above, in many cases, after parties submit affidavits concerning requests for attorneys' fees, there will not be any factual disputes concerning issues upon which the trial court itself is not an expert, i.e., the reasonableness of hourly rates for attorneys and the reasonable number of hours expended by attorneys on particular tasks in litigation. In those cases, there would be nothing to resolve at an evidentiary hearing – as the only disputed issues are the trial court's determination as to the reasonableness of the hourly rates of and the time expended by the attorneys for the party seeking fees. However, as federal courts have noted, there may be instances in which the parties dispute a material historical fact, such as whether or not a case could have been settled without litigation.[6] In such instances, the trial court may very well require an evidentiary hearing to resolve those types of disputes. *See Norman*, 836 F.2d at 1304 ("[W]here there is a dispute of material historical fact . . . , an evidentiary hearing is required."); *United States v. Porchay*, 533 F.3d 704, 710 (8th Cir. 2008) ("We have held that when serious factual disputes surround an application for attorney's fees, a hearing is required." (quoting *Hardman v. Bd. of Educ. of Dollarway, Ark. Sch. Dist.*, 714 F.2d 823, 825 (8th Cir. 1983) (internal alterations omitted))); *Michael A. Cramer, MAI, SRPA,*

---

[6] It would be impossible to list all of the disputes that might require an evidentiary hearing to resolve.

*Inc. v. U.S.*, 47 F.3d 379, 383 (10th Cir. 1995) ("[A]n evidentiary hearing is generally preferred, if not required, when factual disputes exist in connection with a request for attorney fees and costs and those disputes cannot be resolved without a hearing."); *King v. McCord*, 621 F.2d 205, 206 (5th Cir. 1980) (abuse of discretion for trial court not to hold evidentiary hearing to resolve disputed issues of fact); *Imprisoned Citizens Union v. Shapp*, 473 F. Supp. 1017, 1021 (E.D. Pa. 1979) ("An evidentiary hearing is required when material facts are disputed."); *Sorola v. City of Lamesa*, 808 F.2d 435, 437 (5th Cir. 1987) ("In the absence of a disputed issue of material fact, no evidentiary hearing was necessary.").

In addition to factual disputes, there may be instances in which the parties dispute aspects of the lodestar analysis in which trial judges are not experts. For example, the Fourth District noted in *Island Hoppers* that expert testimony may indeed play a role in assisting a trial court in determining the propriety of using a contingency multiplier. 820 So. 2d at 972. As the Fourth District noted:

> [T]he multiplier determination rests upon the necessity of such in the market and many judges, both trial and appellate, who have spent a number of years on the bench may be somewhat unfamiliar with the current state of the market, i.e., what factors influence the current calculus regarding the decision of counsel to undertake representation. The opinion of an expert as to the current status of the market in this regard may provide some assistance to the judge who must ultimately determine what the market does in fact require, especially since the testimony of counsel seeking the multiplier, regarding the necessity of that multiplier, may be entirely self-serving.

23

*Id*. Due to the fact that a multiplier concerns matters in which trial judges are not experts, the Fourth District distinguished the multiplier determination from "the more fundamental issues of appropriate hours expended by counsel, and the rates to be applied, issues where the experience garnered from sitting on the bench and presiding over the gamut of the legal profession affords the trial judge greater insight, and a greater understanding, of what constitutes 'reasonable.'" *Id*. at 972-73. Where the parties dispute aspects of the attorneys' fees calculation in which trial judges are not experts, such as whether a multiplier is appropriate, an evidentiary hearing and expert testimony may be necessary to resolve such a dispute.

Lastly, even where expert testimony is not required, there is of course nothing that prohibits a party from submitting expert testimony, either through an affidavit or at an evidentiary hearing when an evidentiary hearing is appropriate. As Judge Gross stated, "Each party should decide for itself whether securing the testimony of an outside expert will allow it to present a better case." *Island Hoppers*, 820 So. 2d at 977 (Gross, J., concurring specially).[7]

---

[7] We believe that trial courts and parties litigating in Florida would benefit from more detailed procedures for adjudicating motions for attorneys' fees. Therefore, we respectfully suggest that the Florida Supreme Court consider amending Florida Rule of Civil Procedure 1.525 to provide such procedures. For example, an amended Rule 1.525 could provide: (1) in any motion for attorneys' fees, the movant must (a) specify the legal basis for the award of attorneys' fees; (b) specify the hourly rates for all persons for whom fees are sought and the

## IV.    The Instant Case

In this case, Appellant appeals the trial court's award of attorneys' fees on three grounds: (1) the trial court did not conduct an evidentiary hearing; (2) the trial court did not receive testimony from an expert witness before granting the award; and (3) Appellee did not submit records detailing the work performed by Appellees' attorneys.    For the reasons stated herein, we reject Appellant's argument that the trial court was required to hold an evidentiary hearing or receive expert testimony without a showing that the parties disputed any issue that required expert testimony or an evidentiary hearing to resolve.    However, Appellant is correct that the trial court erred by granting an award of attorneys' fees to Appellee where Appellee did not submit records detailing the work performed by Appellees' attorneys. *See CED Cap.*, 363 So. 3d at 196; *Rowe*, 472 So. 2d at 1150.    For that reason alone, we reverse the trial court's award of attorneys' fees to Appellee and

person's qualifications and experience; (c) specify whether a contingency risk multiplier is sought; (d) state whether the movant believes that expert testimony is required to resolve the motion and, if so, on what issues expert testimony is required; (e) state whether the movant requests an evidentiary hearing and whether the movant believes that an evidentiary hearing is required given the issues in dispute; (f) attach or incorporate time records for all fees sought; and (g) attach appropriate supporting affidavit(s) and/or declaration(s); and (2) the non-moving party must file a response to the motion which (a) states whether the non-moving party contests entitlement; (b) specifies each hourly rate to which the non-moving party objects and suggests an alternative hourly rate; (c) specifies each time entry to which the non-moving party objects; (d) states whether the non-moving party believes that expert testimony and/or an evidentiary hearing is required; and (e) attaches appropriate supporting affidavit(s) and/or declaration(s), if any.

remand this case to the trial court with instructions to enter an amended final judgment which removes the award of attorneys' fees, referred to in the final judgment as "Recoverable Balance".[8]

## V.    Conclusion

Sixty-two years ago, the Second District invented a requirement for trial courts to receive expert testimony before granting an award of attorneys' fees. All of our sister courts adopted the requirement without sufficient scrutiny as to its validity, and it led them to also require evidentiary hearings where none should have been required. There was never any legal basis for the expert testimony requirement, or the requirement for universal evidentiary hearings to which it led,

---

[8] The final judgment referred to the award of attorneys' fees as "Recoverable Balance," but both parties agree this encompassed an award of attorneys' fees. Appellee asserts that this amount also included certain other unspecified non-attorneys' fees which were properly recoverable by Appellee. Appellee seeks a remand for the trial court to determine the amount of attorneys' fees recoverable by Appellee as well as the amount of any non-attorneys' fees within the "Recoverable Balance" which Appellee is entitled to recover. However, Appellee already had its trial and an opportunity to prove its damages and its attorneys' fees. Appellee points to no legally sufficient evidence by which it proved the amount of any non-attorneys' fees, nor does Appellee contest that it did not submit records detailing the work performed by Appellee's attorneys in support of its request for attorneys' fees. Appellee is not entitled to a second trial court proceeding merely because it failed to meet its burden of proof at the first proceeding. For this reason, we decline to remand this case to the trial court to determine the amount of an attorneys' fees award or any non-attorneys' fees recoverable by Appellee. *See Foot & Ankle Ctr. of Fla., LLC v. Vargas*, 412 So. 3d 825, 829 (Fla. 6th DCA 2024); *Levy v. Ben-Shmuel*, 255 So. 3d 493, 496 (Fla. 3d DCA 2018).

and these judicially invented requirements have caused the misspent expenditure of hundreds of thousands if not millions of hours of time by attorneys and judges across our state since their wrongful inception. It is long overdue for these errors to be corrected, and we do so today. In doing so, pursuant to Article V, Section 3(b)(4) of the Florida Constitution, we certify this decision to be in direct conflict with the following decisions of our sister courts:

1. *Lyle v. Lyle*, 167 So. 2d 256 (Fla. 2d DCA 1964)

2. *Ortiz v. Ortiz*, 211 So. 2d 243, 245 (Fla. 3d DCA 1968)

3. *Lamar v. Lamar*, 323 So. 2d 43 (Fla. 4th DCA 1975)

4. *Nivens v. Nivens*, 312 So. 2d 201 (Fla. 2d DCA 1975)

5. *Mullane v. Lorenz*, 372 So. 2d 168 (Fla. 4th DCA 1979)

6. *Tanner v. Tanner*, 391 So. 2d 305 (Fla. 4th DCA 1980)

7. *Cohen v. Cohen*, 400 So. 2d 463 (Fla. 4th DCA 1981)

8. *Cooper v. Cooper*, 406 So. 2d 1223 (Fla. 4th DCA 1981)

9. *Brown v. Brown*, 473 So. 2d 844 (Fla. 4th DCA 1985)

10. *Markham v. Markham*, 485 So. 2d 1299 (Fla. 5th DCA 1986)

11. *Silva v. Hernandez*, 595 So. 2d 230 (Fla. 3d DCA 1992)

12. *Yakubik v. Bd. of Cnty. Comm'rs of Lee Cnty.*, 656 So. 2d 591 (Fla. 2d DCA 1995)

13. *Guyton v. Leonard Dewey Wilkinson Action Welding Supply, Inc.*, 707 So. 2d 885 (Fla. 1st DCA 1998)

14. *Rodriguez v. Campbell*, 720 So. 2d 266 (Fla. 4th DCA 1998)

15. *Brake v. Murphy*, 736 So. 2d 745 (Fla. 3d DCA 1999)

16. *Island Hoppers, Ltd. v. Keith*, 820 So. 2d 967 (Fla. 4th DCA 2002)

17. *Rakusin v. Christiansen & Jacknin, P.A.*, 863 So. 2d 442 (Fla. 4th DCA 2003)

18. *Pridgen v. Agoado*, 901 So. 2d 961 (Fla. 2d DCA 2005)

19. *Snow v. Harlan Bakeries, Inc.*, 932 So. 2d 411 (Fla. 2d DCA 2006)

20. *Trumbull Ins. Co. v. Wolentarski*, 2 So. 3d 1050 (Fla. 3d DCA 2009)

21. *Robin Roshkind, P.A. v. Machiela*, 45 So. 3d 480 (Fla. 4th DCA 2010)

22. *Wavra v. Nat'l Credit Union Admin. Bd.*, 86 So. 3d 609 (Fla. 2d DCA 2012)

23. *Minkoff v. Caterpillar Fin. Servs. Corp.*, 103 So. 3d 1049 (Fla. 4th DCA 2013)

24. *Wagner v. Bank of Am., N.A.*, 143 So. 3d 447 (Fla. 2d DCA 2014)

25. *Ghannam v. Shelnutt*, 199 So. 3d 295 (Fla. 5th DCA 2016)

26. *Petrovsky v. HSBC Bank, USA*, 185 So. 3d 700 (Fla. 4th DCA 2016)

27. *Tervil v. U.S. Bank Nat'l Ass'n*, 204 So. 3d 580 (Fla. 4th DCA 2016)

28. *Fogarty v. Tr.*, 231 So. 3d 479 (Fla. 4th DCA 2017)

29. *McCammond v. E. Coast Props., LLC*, 296 So. 3d 1007 (Fla. 2d DCA 2020)

30. *United Auto. Ins. Co. v. Life Med. Ctr. Corp.*, 324 So. 3d 1034 (Fla. 3d DCA 2021)

31. *United Auto. Ins. Co. v. Multimed Care, Inc.*, 322 So. 3d 235 (Fla. 3d DCA 2021)

32. *United Auto. Ins. Co. v. Multimed Care, Inc.*, 322 So. 3d 237 (Fla. 3d DCA 2021)

33. *United Auto. Ins. Co. v. Pro. Med. Grp., Inc.*, 318 So. 3d 1261 (Fla. 3d DCA 2021)

34. *Forte v. All Cnty. Towing Inc.*, 336 So. 3d 316 (Fla. 4th DCA 2022)

35. *Mitchell v. Flatt*, 344 So. 3d 588 (Fla. 2d DCA 2022)

36. *Loftus v. Fairchild*, 395 So. 3d 679 (Fla. 2d DCA 2024)

37. *Poky Mgmt., LLC. v. Solutrean Inv. Grp., LLC.*, 390 So. 3d 753 (Fla. 5th DCA 2024)

AFFIRMED in part; REVERSED in part; and REMANDED with instructions.

GANNAM and PRATT, JJ., concur.
MIZE, J., concurs specially, with opinion.

———————————————

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED

———————————————

MIZE, J., concurring specially.

Today the Sixth District Court of Appeal corrects a glaring error in Florida law that has persisted for more than six decades. As a new court without a large body of prior precedent, the Sixth District has a unique ability to correct long-existing errors in the law and return the law of our state to first principles.

However, in order to best take advantage of the Sixth District's unique capacity to correct errors in the law, appellants and their lawyers must preserve those issues in the trial court and present them to this court on appeal. Where an argument is a basis to affirm the trial court, an appellee need not preserve an

29

argument in the trial court or present the argument on appeal in order for that argument to serve as a basis for the appellate court to affirm the trial court's decision. *See Cohen v. Mohawk, Inc.*, 137 So. 2d 222, 225 (Fla. 1962) ("It should be kept in mind that the judgment of the trial court reached the district court clothed with a presumption in favor of its validity . . . .Accordingly, if upon the pleadings and evidence before the trial court, there was *any* theory or principle of law which would support the trial court's judgment in favor of the plaintiffs, the district court was obliged to affirm that judgment." (internal citations omitted, emphasis in original)); *Chase v. Cowart*, 102 So. 2d 147, 150 (Fla. 1958) (on rehearing, discussing the appellant's objection to the Court having affirmed on a ground not raised by the appellee, "This is easily explained. Decrees and judgments in cases which come to an appellate court for review are presumed to be correct and free from error. We are required to uphold the lower court if valid grounds exist therefor. While the grounds or reasoning used by the trial court or chancellor are frequently helpful to an appellate court on review, they are not controlling. The decision of the appellate court must be made, not on the basis of whether the trial court or chancellor traveled the proper route, used proper reasoning, or laid his conclusion on proper grounds, but rather on whether his conclusion is correct or incorrect."); *State v. Hankerson*, 65 So. 3d 502, 505 (Fla. 2011), *as revised on denial of reh'g* (June 30, 2011) ("[B]ecause a trial court's

ruling must be affirmed where the record supports any legal basis for the judgment, an appellee may raise an argument on appeal that was not raised in the trial court so long as the argument has a reasonable basis in the record."); *Beans v. Beans*, 407 So. 3d 483, 491 n.8 (Fla. 1st DCA 2024), *reh'g denied* (Apr. 30, 2025) ("The 'principle of preservation' is not in play when an appellate court affirms . . . [T]he theories or reasons assigned by the lower court as its basis for the order or judgment appealed from are not in any way controlling on appeal and the Appellate Court will make its own determination as to the correctness of the decision of the lower court." (quoting *In re Yohn's Est.*, 238 So. 2d 290, 295 (Fla. 1970) (internal alterations omitted))); *Freeman v. State*, 373 So. 3d 1255, 1257 n.2 (Fla. 1st DCA 2023) ("[A]n appellee need not present to the trial court the grounds on which the appellate court affirms the trial court's ruling. . . . And an appellee need not present to the appellate court the grounds for affirming the judgment of the trial court. . . . Indeed, the appellate court may affirm even when the appellee does not serve an answer brief." (citing *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999) and *MacNeill v. O'Neal*, 238 So. 2d 614, 615 (Fla. 1970))); *Hicks v. State*, 277 So. 3d 153, 156 n.3 (Fla. 1st DCA 2019) ("Nor can we accept the dissent's view that we are acting unfairly by 'sua sponte raising new issues.' There is a difference between raising new grounds for reversal (which we should not do) and affirming based on any basis the record supports

(which we must do). It is the appellant's burden to show we must reverse, and he cannot meet that burden without overcoming all bases for affirmance." (cleaned up)); *State v. Pitts*, 936 So. 2d 1111, 1133 (Fla. 2d DCA 2006) (stating that under the tipsy coachman doctrine, an appellate court should affirm the trial court "even if the specific grounds articulated by the trial court were erroneous" and "even if the specific basis for affirmance has not been articulated by the appellee" (citations omitted)); *State v. Sims*, 110 So. 3d 113, 116 (Fla. 1st DCA 2013) ("An appellate court has authority to consider an argument not made on appeal as an alternative basis for affirmance." (citing *Dade Cnty. Sch. Bd.*, 731 So. 2d 638)); *Jaworski v. State*, 804 So. 2d 415, 419 (Fla. 4th DCA 2001), *on reh'g* (Dec. 26, 2001) ("As an appellate court, however, we are obligated to entertain any basis to affirm the judgment under review, even one the appellee has failed to argue."). That is what occurred in the court's opinion today – based on arguments not presented by Appellee, this court declined to reverse the trial court's order based on its failure to receive expert testimony or conduct an evidentiary hearing to determine the amount of an award of attorneys' fees. This was entirely appropriate because Appellant was required to overcome all possible bases for affirmance that were supported by the record, whether Appellee raised those bases for affirmance or not.

In contrast, where correcting an error in the law would result in a reversal rather than affirmance, this court cannot reach such an argument unless it has been

32

preserved in the trial court and presented to this court on appeal. *See Bryant v. State*, 901 So. 2d 810, 822 (Fla. 2005) ("In order to preserve an issue for appeal, the issue must be presented to the lower court and the specific legal argument or grounds to be argued on appeal must be part of that presentation." (quoting *Archer v. State*, 613 So. 2d 446, 448 (Fla. 1993))).

Since the Sixth District issued *CED Capital Holdings 2000 EB, LLC v. CTCW-Berkshire Club, LLC*, 363 So. 3d 192 (Fla. 6th DCA 2023), in which this court announced that it is not bound by the decisions of our sister courts and that it would decide issues from first principles in the absence of a binding holding from the Florida Supreme Court, we have seen a stunning dearth of litigants making arguments from first principles even when it is clear that there is no binding holding from the Florida Supreme Court that resolves their case. Rather, litigants often simply point to the decisions of our sister courts and assume we will follow them – despite our repeated statements that we will only follow the decisions of our sister courts when those decisions are correct. *See CED Cap.*, 363 So. 3d at 195; *Edmonds v. Edmonds*, 363 So. 3d 213, 215 n.3 (Fla. 6th DCA 2023); *Julia v. Ramos-Baez*, 395 So. 3d 1121, 1125 (Fla. 6th DCA 2024); *Amazulu Transp., Inc. v. Dinkins*, 407 So. 3d 540, 544 (Fla. 6th DCA 2025); *J.E.J. v. S.A.B.*, 416 So. 3d 1186, 1194 (Fla. 6th DCA 2025); *Crecelius v. Rizzitano*, No. 6D2024-2217, 2026 WL 555031, at *1 (Fla. 6th DCA Feb. 27, 2026).

If it is not already clear, parties and their counsel litigating in courts within the Sixth District should vigilantly watch for issues on which our sister courts have erred and which we can correct. When trial counsel litigates an issue in trial court and there is adverse precedent from another district court of appeal which appears to be incorrect, counsel should determine whether there is a *holding* from the Florida Supreme Court that has resolved that issue. If not, counsel should argue to the trial court that while the trial court is bound by the decision from the other district court,[9] counsel is nonetheless arguing that the decision is wrong, and that counsel is preserving that argument for appeal. On appeal in this court, that argument can then be raised as a basis for reversal and decided. When the issue is properly brought before us, we will always endeavor to decide the issue correctly under the law, with due respect to our sister courts but never deference.[10] Every error in the law that we correct will inure to the benefit of the judicial system and

[9] *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts." (citation omitted)).

[10] Even if there is a holding from the Florida Supreme Court which resolves an issue but which was incorrectly decided, counsel may still argue to the trial court that while the court is bound by the Florida Supreme Court's decision, the decision is wrong, and that counsel is preserving that argument for appeal. On appeal in the Sixth District, counsel can then in good faith argue that while the Sixth District is bound by the Florida Supreme Court's holding, the Sixth District should certify a question of great public importance concerning whether that decision is incorrect. Art. V, § 3(b)(4), Fla. Const. If the Sixth District agrees and certifies the question, the litigant can then appeal to the Florida Supreme Court, and the Court will have the opportunity to correct the error if it determines that the decision is in fact incorrect.

34

the people of our state, in addition to the successful litigant that brought the argument before us.

In sum, it is not just the Sixth District Court of Appeal that has a unique opportunity – it is also the lawyers and parties litigating in courts throughout the Sixth District. To best improve the law in our state and to best serve their clients, lawyers must seize that opportunity.

_____

Nicholas Vidoni, of Vidoni Law PLLC, Cocoa, for Appellant.

Rosannie T. Morgan, of Burr & Forman, LLP, Orlando, for Appellee, Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates Series 2005-R8.

No Appearance for Appellees, Raymond Lozano, Alili Rihkrand, Islebrook at Meadow Woods Homeowners' Association, Inc., Orange County, and CIT Financial, Inc.